# STATE OF MICHIGAN

# COURT OF APPEALS

---

JEREMY A. FOGG,

      Plaintiff/Counter-Defendant-
Appellee-Cross-Appellant,

v

SHEILA K. BAUER, formerly known as SHEILA
K. FOGG,

      Defendant/Counter-Plaintiff-
Appellant/Cross-Appellee.

UNPUBLISHED
May 12, 2016

No. 325403
Ottawa Circuit Court
LC No. 13-075525-DM

---

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Defendant, Sheila Bauer, appeals as of right a judgment of divorce. Plaintiff, Jeremy Fogg, cross-appeals the same judgment. For the reasons stated below, we affirm in part, reverse in part, and remand for a recalculation of child support.

## I. FACTS

Plaintiff and defendant were life-long friends and married in 1995. During the marriage, plaintiff worked at Gentex Corporation—a publicly traded corporation founded by defendant's father Fred Bauer—while defendant raised their two children. Plaintiff and defendant lived in one of the four residences on "the Bauer Compound"—a large parcel of land on Lake Michigan that was owned by defendant's parents—Fred and Lois Bauer. Plaintiff and defendant lived in the residence rent free and their living expenses were paid by defendant's parents. The parties and their children enjoyed an extremely high standard of living, due in large part to the generosity of defendant's parents.

After working for Gentex for nearly 20 years and advancing to a vice president position in the company, plaintiff was forced to resign from Gentex in 2012. While the circumstances surrounding plaintiff's resignation are not entirely clear, this caused the relationship between the parties to sour. The parties then separated, and plaintiff initiated this action in 2013.

After an eight day bench trial, the trial court distributed the marital estate equally, awarding plaintiff and defendant each $1,690,886. The trial court ordered plaintiff to pay $404 a month in child support, but did not require him to pay spousal support.

-1-

Defendant filed a motion for reconsideration of the trial court's opinion, arguing, among other things, that the trial court erred in calculating the parties' incomes for purposes of determining child support. The trial court denied defendant's motion stating that the error was not a sufficient basis to reconsider the calculation in its previous opinion. This appeal ensued.

## II. ANALYSIS

### A. MARITAL VS SEPARATE PROPERTY

First, the parties raise several issues regarding whether certain property was separate property or marital property and subject to division. Specifically, defendant argues that her premarital Gentex stock was erroneously classified as marital property. Plaintiff, on cross-appeal, contends that the costs of renovating the marital home should have been included in the marital estate for purposes of property distribution. We will address each of the parties' arguments in turn.

Whether a particular asset is marital or separate is a factual determination that is reviewed for clear error. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). A finding is clearly erroneous if this Court is left with a definite and firm conviction that a mistake has been made. *Id*. If a trial court's findings of fact are upheld, we must then decide whether the dispositive ruling was fair and equitable in light of those facts. *McNamara v Horner*, 249 Mich App 177, 183; 642 NW2d 385 (2002). "A disposition ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *Id*.

In granting a divorce, a trial court may divide all property that came "to either party *by reason of the marriage*." *Reeves v Reeves*, 226 Mich App 490, 493; 575 NW2d 1 (1997), quoting MCL 552.19. When dividing property in a divorce proceeding, a trial court must first determine whether property is a marital asset or a party's separate asset. *Reeves*, 226 Mich App at 493. In general, marital assets are subject to division among the parties and a party's separate assets are not. *McNamara*, 249 Mich App at 183. Marital assets are assets that are earned or acquired during the marriage, whereas separate assets are assets that are obtained or earned prior to the marriage. *Cunningham*, 289 Mich App at 201. However, "separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and 'treated by the parties as marital property.' " *Id*., quoting *Pickering v Pickering*, 268 Mich App 1, 11; 706 NW2d 835 (2005). The conduct of the parties is "the clearest indicia" of whether they intended to treat the asset as marital or separate. *Cunningham*, 289 Mich App at 209.

### 1. GENTEX STOCK

As mentioned above, defendant contends that the trial court clearly erred when it found as fact that her premarital Gentex stock was a marital asset. The trial testimony established that defendant acquired 72,000 shares of Gentex stock prior to the marriage and that it was held in defendant's sole name. At that point, the Gentex stock was separate property. *Id*. at 201. However, the trial court accepted plaintiff's testimony which established that defendant transferred her Gentex stock to a joint account so that plaintiff and defendant could sell the Gentex stock to take advantage of lower capital gains tax rates and to have the necessary funds to

make a down payment on a blueberry farm that was intended to be a marital investment.

Defendant contends that even though she transferred her Gentex stock to a joint account, it remained separate property because a mere change in title is not dispositive of whether an asset is separate or marital. *Id*. at 201-202. However, the facts indicate more than just a mere change in title. Plaintiff's testimony demonstrated that the shares of Gentex stock were intended to be treated as marital property because he testified that defendant deposited her premarital Gentex stock into a jointly held account to accomplish the marital goals of reducing their tax liabilities and purchasing a blueberry farm. *Id*. at 209. Therefore, the parties' conduct—the clearest indicia of whether an asset is marital—indicates that the parties intended to treat the Gentex stock as marital property. Accordingly, the trial court's factual finding that the Gentex stock was marital property was not clearly erroneous.

## 2. COSTS OF RENOVATING THE MARITAL RESIDENCE

On cross-appeal, plaintiff argues that the trial court clearly erred in finding that the renovations to the marital residence was not a marital asset. We reject plaintiff's contention because only assets that came "to either party by reason of the marriage" are marital assets and thus subject to division. *Reeves*, 226 Mich App at 493. Here, the cost of renovating the marital residence, which was not owned by the parties, was an expense, and any increase in value as a result of the renovations is an asset of the owners of the home—Fred and Lois. The parties' testimony established that they did not own an interest in the marital residence. To the extent defendant argues that the equity of the marital home as a result of the renovations be divided, we will not do so as this Court has no authority to adjudicate the rights of third parties. *Thames v Thames*, 191 Mich App 299, 302; 477 NW2d 496 (1991). Therefore, the trial court's factual finding that the expense of renovating the marital home was not marital property subject to division was not clearly erroneous.

## 3. EQUITABLENESS OF THE PROPERTY DIVISION

Having affirmed that the trial court's factual findings with regard to the division of property were not clearly erroneous, we must next decide whether the dispositive ruling was fair and equitable in light of those facts. *McNamara*, 249 Mich App at 183. We hold that it was. Plaintiff and defendant both received $1,690,886. Because the parties received congruent amounts, the division of property was fair and equitable. *Id*. at 188.

## B. CHILD SUPPORT

Next, the parties raise several arguments underlying the child support order which required plaintiff to pay defendant $404 a month. Child support orders are reviewed for an abuse of discretion. *Clarke v Clarke*, 297 Mich App 172, 178-179; 823 NW2d 318 (2012). "However, whether the trial court properly applied the MCSF [(Michigan Child Support Formula)] presents a question of law that we review de novo." *Id*. at 179. "Factual findings underlying the trial court's decisions are reviewed for clear error." *Id*.

## 1. THE PARTIES' INCOMES

MCL 552.605(2) requires that a trial court order child support "in an amount determined by application of the child support formula developed by the state friend of the court bureau [the

Michigan Child Support Formula (MCSF) Manual]" unless the court determines that application of the child support formula would be unjust or inappropriate. The MCSF Manual requires that the court begin its assessment through determination of the parents' incomes. *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011); 2013 MCSF 2.01. "The objective of determining net income is to establish, as accurately as possible, how much money a parent should have available for support." 2013 MCSF 2.01(B). The MCSF directs that "[a]ll relevant aspects of a parent's financial status are open for consideration when determining support," 2013 MCSF 2.01(B), and a parent's income calculated under the MCSF "will not be the same as that person's take home pay, net taxable income, or similar terms that describe income for other purposes." MCSF 2.01(A). Income includes earnings generated from rentals and dividends, 2013 MCSF 2.01(C)(2) and (5). Furthermore, "[i]ncome may include the value of gift or gratuities such as money, food, shelter, transportation, or other goods or services that a parent receives from relatives (other than a spouse), friends, or others, to the extent it (1) is significant and regularly reduces personal expenses, or (2) replaces or supplements employment income." 2013 MCSF 2.05(B).

### a. PLAINTIFF'S INCOME

Defendant asserts that the trial court's factual finding that plaintiff had an income of $75,000 was clearly erroneous. At trial, plaintiff testified that he was making an estimated $75,000 at his new job at Green Trust Capital Management. In addition to the income plaintiff receives from Green Trust Capital Management, plaintiff admitted to making an additional $5,000 day trading. Therefore, we are left with a definite and firm conviction that a mistake was made as plaintiff admitted that he had income of $80,000. The trial court's finding that plaintiff had an income of $75,000 was clearly erroneous.

### b. DEFENDANT'S INCOME

Plaintiff, on cross-appeal, contends that the trial court clearly erred in its factual findings with regard to defendant's income. The trial court determined defendant's income to be $199,200. In arriving at this figure, the trial court first found that defendant's annual expenses for herself and the children, which will be paid by her parents, amount to $115,200. The trial court also found that defendant's earnings generated from her Gentex stock and from the rental income from her holdings in G&C Associates amounted to $40,217 annually. The trial court found that the $40,217 "was subsumed in her $115,200 annual expenses." Furthermore, the trial court determined that the fair rental value of her residence was $84,000. The trial court then added $115,200 and $84,000 to determine that plaintiff's income is $199,200.

Plaintiff contends that the annual expenses of $115,200 that will be paid by defendant's parents does not properly account for all of the actual gifts defendant received from her parents. See 2013 MCSF 2.05(B). At trial, defendant testified that her annual expenses are $115,000. She also testified that her parents would no longer be paying for any expenses, other than medical and educational expenses, as a result of an IRS notice her parents received during the course of trial, and that she was going to be dependent on spousal support to meet her annual expenses. Despite defendant's testimony, the trial court determined that defendant's parents were, in fact, still going to pay her annual expenses, consistent with prior years' practice. As a result of this determination, the trial court found that defendant will receive $115,000 in gifts

from her parents as they will be paying her annual expenses. While plaintiff testified that defendant's parents made gifts to defendant in an amount greater than $115,000 per year and that they paid all utility bills, food and dining expenses, clothing expenses, and travel expenses, the trial court was in the best position to assess the credibility of the witnesses and determine how much defendant will receive in income as a result of the gifts from her parents. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). We will defer to the trial court's assessment that defendant's parents will continue to provide gifts to cover her annual expenses of $115,000. *Id*. Therefore, the trial court's finding that her parents will give her $115,000 to pay for her annual expenses was not clearly erroneous.

### c. DISTRIBUTION OF GENTEX STOCK

Defendant also asserts that both parties' incomes were improperly calculated as a result of the distribution of the Gentex stock—which generated a substantial income to the parties in dividends. The trial court determined that defendant received $40,217 from dividends from her premarital Gentex stock and her rental properties. However, when distributing the marital property, the trial court gave 33,100 shares of the Gentex stock to plaintiff, which left defendant with 37,400 shares of stock. As a result, plaintiff now receives dividends from 33,100 shares of Gentex stock while defendant receives dividends on only 37,400 shares of Gentex stock. Stated differently, after the divorce, plaintiff would have more income available for support as he now receives dividends on 33,100 shares of stock which are to be included in income. In contrast, defendant would have less income available for support because instead of receiving dividends on 70,500 shares, she is now only receiving income on 37,400 shares of Gentex stock. Because the trial court failed to attribute the appropriate amount in dividend income each party will receive, the parties' incomes do not accurately reflect the income each party has available for support. On this record, it is impossible to determine how much 33,100 and 37,400 shares of stock generates in income, particularly because the trial court's finding grouped defendant's income from dividends and income from rental property into one figure. Accordingly, we remand for the trial court to recalculate the parties' income. In doing so, the trial court (1) may take additional evidence concerning the income generated from the parties' respective shares of stock, (2) shall make the necessary findings of fact, and (3) recalculate the child support award. *Thornton v Thornton*, 277 Mich App 453, 459; 746 NW2d 627 (2007).[1]

### 2. EDUCATIONAL EXPENSES

Defendant next argues that the trial court abused its discretion when it decided not to deviate from the MSCF and award defendant money for education expenses of the children. The trial court may deviate from "strict application of the [MCSF]" when "an unjust or inappropriate result" occurs in a case when the child has extraordinary educational expenses. 2013 MSCF 1.04(E)(2). Here, there is no unjust or inappropriate result, primarily because testimony was

---

[1] This argument was also the basis for defendant's motion for reconsideration. Having determined that a remand is necessary to recalculate the parties' incomes for purposes of determining child support, it is not necessary to decide whether the trial court abused its discretion when it denied defendant's motion for reconsideration.

presented that defendant would still have use of the credit card paid by Fred and Lois for the children's educational and medical expenses. In fact, the trial court found that defendant's parents' typically pay for all the expenses of defendant and the children. This is not a situation where one of the party's is solely responsible for bearing all of the costs of expensive private school tuition. Instead, neither party is bearing the costs of the children's educational expenses as Fred and Lois will continue to pay those costs. As such, we cannot say that the trial court abused its discretion in choosing not to deviate from the child support formula.

## C. SPOUSAL SUPPORT

We next address defendant's argument that the trial court made erroneous findings of fact when it denied her request for spousal support. The award of spousal support is in the trial court's discretion. *Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003). "An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Berger v Berger*, 277 Mich App 700, 722; 747 NW2d 336 (2008). The trial court's findings of fact relating to an award of spousal support are reviewed for clear error. *Gates v Gates*, 256 Mich App 420, 432; 664 NW2d 231 (2003).

"The main objective of alimony is to balance the incomes and needs of the parties in a way that will not impoverish either party, and [spousal support] is to be based on what is just and reasonable under the circumstances of the case." *Olson*, 256 Mich App at 631. When determining whether a spouse should receive spousal support, the court should consider:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Id.*]

The trial court expressly referenced the relevance of the 14 factors listed above and determined that the equitable result, under the circumstances, was to deny defendant's request for spousal support. Nevertheless, defendant makes several arguments related to the applicability of the factors and the trial court's factual findings.

First, defendant contends that the trial court clearly erred in finding that the past relations and conduct of the parties weighed against an award of spousal support. Particularly, defendant asserts that the trial court failed to consider defendant's testimony of "an ongoing patterns of demeaning, assaultive behavior which continued throughout the marriage." However, the trial court did not fail to consider this testimony as the trial court rejected defendant's allegations of abuse by finding that "[t]he parties seem to have enjoyed a fairly typical successful marriage until early 2013." The trial court also recognized defendant's testimony about plaintiff's "unnecessary force" while "making love," but the trial court was not convinced by defendant's testimony. Therefore, the trial court did not fail to consider defendant's testimony regarding plaintiff's alleged physical, sexual and verbal abuse; it just decided not to believe defendant's

version of events. We will not interfere with the trial court's determinations of credibility. *Shann*, 293 Mich App at 305. Therefore, the trial court's factual finding was not clearly erroneous.

Second, defendant argues that the trial court clearly erred in determining that the source and amount of property awarded to the parties weighed against spousal support. With regard to this factor, the trial court recognized that both parties received a substantial property award in the distribution of the estate. In fact, both parties were awarded $1,690,886. In a situation such as this, "where both parties are awarded substantial assets, the court, in evaluating a claim for alimony, should focus on the income-earning potential of the assets and should not evaluate a party's ability to provide self-support by including in the amount available for support the value of the assets themselves." *Hanaway v Hanaway*, 208 Mich App 278, 296; 527 NW2d 792 (1995). In assessing this factor, the trial court only emphasized that the parties would be receiving substantial assets and did not evaluate the income producing assets awarded to the parties. Because the trial court failed to evaluate the income producing assets awarded to the parties, the trial court clearly erred when considering this factor.

Third, defendant argues that the trial court erred when it determined that plaintiff did not have the ability to pay spousal support. The trial court determined that plaintiff did not have the ability to pay spousal support as plaintiff was making $75,000 and paying his own expenses. Because the trial court relied on this erroneous calculation, the trial court erred in assessing this factor.

Fourth, defendant contends that the trial court erred when it found that the factor regarding the contributions of the parties to the marital estate favored plaintiff and against an award of spousal support. The trial court found that the contributions of the parties' were "roughly equal." More specifically, the trial court found that plaintiff worked hard during the marriage and accumulated significant amounts of stock and various acquisitions of personal property. On the other hand, the trial court recognized that while defendant contributed significant amounts of previously owned Gentex stock to the marital estate, that was her *only* major financial contribution to the marital estate. Thus, the trial court did not clearly err in determining that this factor weighed against an award of spousal support.

Fifth, defendant argues that the trial court made an erroneous factual finding when it determined that the parties were equally at fault for the breakdown of the marriage. Defendant, relying on her own testimony, argues that plaintiff was at fault for the breakdown of the marriage because of his sexual and physical abuse. As mentioned previously, the trial court, the assessor of credibility, apparently rejected that portion of defendant's testimony and believed plaintiff's testimony that he did not physically or sexually abuse defendant. Specifically, in rejecting defendant's contention that plaintiff caused the divorce because of his physical and sexual abuse, the trial court found that "[t]he marriage of the parties appears to have been strong until plaintiff's resignation from Gentex." We will defer to the trial court's assessment on the credibility of the witnesses. *Shann*, 293 Mich App at 305. Therefore, the trial court's determination that the parties' were equally at fault is not clearly erroneous.

Defendant next contends that the trial court's factual finding regarding the effect of defendant's cohabitation on plaintiff's financial status was clearly erroneous. The trial court was

uncertain as to whether this factor was even applicable to the case. Nonetheless, the trial court determined that this factor weighed against an award of spousal support because defendant was receiving significant financial assistance from her parents and that such financial assistance would continue.

The trial court should have found that this factor was not applicable. Cohabitation requires that a "couple must be living together . . . as partners in life, or dwelling together, in the manner of husband and wife." *Smith v Smith*, 278 Mich App 198, 201; 748 NW2d 258 (2008) (citations and quotation marks omitted).[2] To find a genuine cohabitation relationship, "there must be an actual living together, that is, the [couple] must reside together in the same home or apartment." *Id*. No evidence was presented that defendant was actually living with another person as a partner in life in the same home or apartment. The only evidence presented with regard to defendant's living situation was that she was living in the marital house on the Bauer Compound. Thus, although the trial court clearly erred in determining that defendant was cohabitating, the trial court's finding that defendant's parents would continue to pay for all of her living expenses essentially equated to a cohabitation situation, and was not clearly erroneous.

Lastly, defendant contends that the trial court relied on the parties' erroneous calculations of income when assessing general principles of equity. In addressing this factor, the trial court noted that *if* it used the incomes of the parties as set forth by the MCSF, it would require defendant to pay spousal support to plaintiff, but then also noted that if it deducted the shelter value from defendant's annual income, the incomes of the parties would be much closer in range. However, instead of relying on the parties' incomes in assessing this factor, the trial court stated: "The reality is that there is sufficient property awarded to each party and sufficient alternate means of support for the defendant." The alternate means, of course, refers to payment of defendant's annual expenses by her parents. Despite defendant's contention, the trial court did not rely on the parties' erroneously calculated incomes in addressing this factor.

Despite some errors in addressing the spousal support factors, the trial court's errors were harmless. *Giesen v Giesen*, 140 Mich App 335, 339; 364 NW2d 327 (1985). The trial court found that after the divorce, defendant would continue to receive substantial assistance from her parents. In fact, the trial court determined that she would be receiving $115,900 from her parents to pay for her living expenses, and would continue to live at the marital home rent free. Further, the trial court added that defendant "literally lacks for nothing due to the generosity of her parents." On the basis of the remaining facts as found by the trial court, any errors in addressing two of the 14 spousal support factors were harmless.

## D. VALUATION DATE

---

[2] We note that there is little case law regarding cohabitation and the award of spousal support; the majority of the case law involves post-divorce motions to terminate spousal support based on cohabitation. See *Ianitelli v Ianitelli*, 199 Mich App 641, 644; 502 NW2d 691 (1993).

Defendant next takes issue with the trial court's decision to use the last day of trial to value the marital property. A trial court's determination of the valuation date is reviewed for an abuse of discretion. *Thompson v Thompson*, 189 Mich App 197, 199; 472 NW2d 51 (1991).

Marital assets are typically valued as of the last day of trial or the date of judgment. *Byington v Byington*, 224 Mich App 103, 114 n 4; 568 NW2d 141 (1997). However, a trial court may select a more appropriate date if it desires. *Id*. "[I]n determining the valuation date, the circuit court must and does retain considerable discretion to see that equity is done." *Id*.

Here, the trial court acted within its considerable discretion when it selected the last day of trial as the valuation date for the marital property. As stated above, marital assets are typically valued as of the last day of trial. *Id*. While the trial court could have selected a June 1, 2013 valuation date, the court chose not to do so for legitimate and rational reasons. Having selected the day marital assets are typically valued, we cannot conclude that the trial court abused its discretion.

## E. ESTABLISHMENT OF A TRUST

Defendant next disagrees with the trial court's factual findings in relation to its decision to decline to establish a trust for the benefit of the parties' children. MCL 552.20 allows the trial court to order real or personal property to be delivered to a trustee for the benefit of the children of the marriage. MCL 552.20 provides:

> Upon every divorce, and upon every divorce from bed and board for any cause, if any real and personal estate of either party, or money in lieu of the real or personal estate is awarded to either party as provided in section 19, the court, instead of ordering it to be delivered or paid to either party, may order it to be delivered or paid to a trustee or trustees, to be appointed by the court, upon trust to invest it, and to apply the income from it to the support and maintenance of either party, and of the children of the marriage, or any of them, in the manner as the court shall direct.

In declining to place the Gentex stock in a trust for the benefit of the children, the trial court stated:

> The Defendant has proposed that the Court resolve some of the property issues by placing some assets in a trust for the benefit of the children. The Court declines to do so, as the parties have not expressed a mutual agreement on that disposition. Additionally, the Court does not find that the creation of the a trust for the benefit of the minor children and the placement of assets of the marriage by order of the Court into that trust would result in a fair and equitable distribution of the marital estate.

Defendant asserts that the trial court's factual finding that plaintiff and defendant did not express a mutual agreement to place the stock into a trust for the benefit of the children is erroneous because the evidence established that the parties did agree to create a trust for the benefit of the children. Defendant points to her own testimony and the testimony of Peter Huizenga, a family friend, to demonstrate that plaintiff, in fact, agreed to establish a trust for the

children funded by Gentex stock. While testimony was elicited from defendant and Huizenga, that plaintiff agreed to place the Gentex stock into a trust for the benefit of the children of the marriage, plaintiff testified that he did not in fact agree to such an arrangement. Because we defer to the trial court's credibility determinations, *Shann*, 293 Mich App at 305, the trial court did not clearly err in finding that the parties did not express a mutual agreement to place the Gentex stock in a trust for the benefit of the children of the marriage.

## F. DISSIPATION OF MARITAL ESTATE

Lastly, in plaintiff's cross-appeal, plaintiff takes issue with the trial court's factual findings with regard to his claim that defendant dissipated the marital estate. At trial, plaintiff advanced two theories: (1) that defendant dissipated the marital estate prior to entry of a mutual restraining order and (2) that defendant violated the mutual restraining order that was entered after the filing of the complaint prohibiting the transfer of funds that were not "necessary to pay monthly living expenses" or "regular and routine payments."

"[W]hen a party has dissipated marital assets without the fault of the other spouse, the value of the dissipated assets may be included in the marital estate." *Woodington v Shokoohi*, 288 Mich App 352, 368; 792 NW2d 63 (2010), citing 2 Michigan Family Law (6th ed., 2008 Supp), Property Division, § 15.21. Dissipate means to "spend or use up wastefully or foolishly." *Merriam-Webster's Collegiate Dictionary* (11th ed.).

Plaintiff presented evidence at trial of various expenditures totaling approximately $40,000, which were made with marital funds prior to, and after, the entry of the mutual restraining order. After the presentation of evidence, the trial court did not address either of plaintiff's theories in its written opinion. Once the parties informed the trial court that it overlooked the issues, the trial court ruled from the bench and determined that the payments at issue were regular family bills that were previously paid with marital funds. While plaintiff testified that the payments were not regular and routine payments, the trial court was free to determine whether plaintiff's testimony was credible. *Shann*, 293 Mich App at 305. The trial court, as the assessor of credibility, rejected plaintiff's testimony on this topic and found that the bills at issue were regular family bills, indicating that defendant did not intentionally dissipate marital funds or violate the mutual restraining order. Because this Court defers to the trial court's assessment of credibility, *id.*, the trial court did not commit clear error when it determined that defendant did not dissipate the marital estate or violate the mutual restraining order.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs as neither party prevailed in full. MCR 7.219(A).

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray