McNAMARA v HORNER

Docket No. 216018. Submitted February 14, 2001, at Detroit. Decided January 11, 2002, at 9:05 A.M.

Jane E. McNamara obtained a divorce from Albert O. Horner in the Oakland Circuit Court, Edward Sosnick, J. At the time of the couple's marriage, the plaintiff owned, along with other assets, stock in a certain bank and had funds in a credit union retirement fund and in a tax-deferred annuity. The defendant brought into the marriage, along with other assets, funds in a credit union retirement fund and a tax-deferred annuity. Both parties were employed by a credit counseling company, where, at the time of the marriage, the defendant was the president of the company and the plaintiff was his assistant. Throughout their ten-year marriage, each made yearly substantial contributions to their respective retirement funds and annuities, with the prenuptial and postnuptial funds in each of the accounts being commingled. During the pendency of the divorce action, the defendant retired as president of the company and was given a substantial retirement severance package that was payable over three years. On the defendant's retirement, the plaintiff became the president of the company at which they had both worked. Following a bench trial, the court treated the bank stock and the appreciation of the funds in the retirement funds and annuities as part of the marital estate, treated the defendant's retirement severance payment as income rather than part of the marital estate, awarded certain stipulated prenuptial assets to the party that brought the asset into the marriage, and divided the remaining marital estate equally between the parties. Pursuant to a motion by the plaintiff, the court amended the property settlement by awarding to the plaintiff the bank stock that she brought into the marriage as her separate property, rather than treating the stock as a marital asset. However, in the same order, the court held that, given the age disparity of the parties and their present and future earning potential, equity required that the remaining marital assets be divided so that fifty-five percent of the assets would go to the defendant and forty-five percent would go to the plaintiff and proceeded to divide the marital assets in that proportion. The defendant appealed, and the plaintiff cross appealed.

The Court of Appeals *held*:

1. Because the parties commingled premarital and marital assets in the retirement funds and tax-deferred annuities and it is impossible from the evidence presented to accurately determine the amount of appreciation attributable to the premarital assets, the trial court correctly held that the entire appreciation of the retirement funds and tax-deferred annuities were part of the marital estate.

2. In reaching an equitable division of a marital estate, a trial court is to consider the following factors whenever they are relevant to the circumstances of the particular case: the duration of the marriage, the contributions of the parties to the marital estate, the age of the parties, the health of the parties, the life status of the parties, the necessities and circumstances of the parties, the earning abilities of the parties, the past relations and conduct of the parties, and the general principles of equity. Where any of these factors are relevant to the determination of the value of the marital property or the needs of the parties, the trial court must make specific findings of fact regarding those factors.

3. The trial court in its original opinion considered fault, contributions of each party to the marital estate, and the earning ability of each party and determined that an equal division of the marital assets would be appropriate. In the revised opinion, the court held that, given the disparity in the ages of the parties and their present and future earning potential, it would be more equitable to split the marital assets fifty-five percent to forty-five percent in favor of the defendant. The failure of the trial court to make findings of fact concerning the other factors that should be considered, including general principles of equity, suggests that the court may have given disproportionate weight to its nonspecific findings regarding the ages and earning abilities of the parties. Accordingly, the matter must be remanded to the trial court for further findings of fact regarding the relevant factors.

4. If any portion of the retirement severance package that the defendant received was earned during the marriage, that portion of the package must be considered a part of the marital estate that is subject to division. On remand, the court must determine whether the retirement package was earned during the marriage and, if so, whether the current division of the marital assets is equitable.

5. Because this matter is being remanded for further findings of fact, it is not reasonable to determine at this time whether the property division is equitable.

Affirmed in part, reversed in part, and remanded. Jurisdiction retained.

WHITE, P.J., concurring in part and dissenting in part, stated that the trial court properly treated the entire appreciation of the retirement funds and annuities as part of the marital estate and that the trial court's findings of fact were adequate and its division of the marital property was equitable. The trial court's judgment should be affirmed, but the matter should be remanded with instructions that the trial court determine the extent to which portions of the defendant's retirement severance package were comparable to payments that the plaintiff had already received and had been treated as marital property and then to make any adjustments to the division of the marital property that might be necessitated by the new findings.

1. DIVORCE — MARITAL PROPERTY — APPRECIATION OF ASSETS — COMMINGLED FUNDS.

The entire amount of the appreciation of a retirement fund or tax-deferred annuity is properly treated as part of the marital estate for the purpose of the division of the marital estate in a divorce proceeding where both premarital and marital contributions have been commingled in the retirement fund or annuity and no evidence has been presented concerning the amount of the appreciation that is attributable to the premarital contributions.

2. DIVORCE — DIVISION OF MARITAL PROPERTY — FINDINGS OF FACT.

A trial court establishing the division of marital property must consider the following factors if they are relevant to the circumstances of the particular case: the duration of the marriage, the contributions of the parties to the marital estate, the ages of the parties, the health of the parties, the life status of the parties, the necessities and circumstances of the parties, the earning abilities of the parties, the past relations and conduct of the parties, and the general principles of equity; the trial court must make specific findings of fact regarding each of the factors that is relevant to the value of the property or to the needs of the parties and must not give disproportionate weight to any one factor.

3. DIVORCE — MARITAL ESTATE — RETIREMENT SEVERANCE PAYMENTS.

Any portion of a retirement severance package that was earned during marriage must be considered a part of the marital estate that is subject to division in a divorce proceeding.

*Norman L. Zemke*, for the plaintiff.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Lawrence Warren* and *Carl B. Downing*), for the defendant.

Before: WHITE, P.J., and WILDER and ZAHRA, JJ.

WILDER, J. Defendant appeals as of right a judgment of divorce and a related qualified domestic relations order. Plaintiff cross appeals by leave granted the judgment of divorce. We affirm in part, reverse in part, and remand.

## I. FACTS AND PROCEEDINGS

Defendant formed Credit Counseling Centers, Inc. (CCC), in 1961, serving as its president and chief executive officer (CEO) until his retirement from the company on December 31, 1997. In 1980, plaintiff began working for defendant as the director of education and assistant to the president of CCC. On December 18, 1987, after working together for seven years, the parties were married. This marriage was the second marriage for defendant and the third for plaintiff. No children were born to the parties in this marriage, and plaintiff is childless. However, defendant has four adult children from his prior marriage.

Before the parties' marriage, plaintiff received a gift of Huntington Bank stock from her grandparents, which at the time of the marriage was worth approximately $24,000. Plaintiff did not buy or sell any additional shares of stock in Huntington Bank during the marriage; nonetheless, at the time of the divorce, the stock had appreciated to a value of $402,000. In addition, before the marriage plaintiff had a Michigan Credit Union retirement fund valued at $3,326.81 and

a Mutual of America tax-deferred annuity (TDA) valued at $5,503.22. Defendant, before the marriage, also had a Michigan Credit Union retirement fund and Mutual of America TDA valued at $132,876 and $110,061, respectively.

Before defendant retired from CCC, he received a base salary of $160,000, plus a bonus.[1] In 1997, defendant received a retirement package from CCC totaling $860,000, which was to be paid to him over a three-year period, beginning on January 1, 1998. Upon defendant's retirement, plaintiff, as anticipated, became the president and CEO of CCC, with a salary of $140,000 a year, plus a possible bonus.[2] From 1990 to 1997, plaintiff's salary was $115,500, plus possible bonuses. Throughout their marriage, the parties deposited their paychecks into a joint account and shared their respective incomes. In addition, ten percent of each party's salary, up to the social security integration level, and 15.7 percent after that amount, up to a maximum of $150,000, was put into their respective Michigan Credit Union retirement accounts by CCC. Further, each party contributed $95,000— $9,500 a year—to their separate TDAs. In both cases, the funds were deposited into retirement accounts and TDAs that had premarital assets. Thus, both plaintiff's and defendant's marital contributions to these accounts were commingled with their separate assets.

On October 24, 1996, after nine years of marriage, plaintiff filed for divorce. On July 21, 1998, the trial court, after a bench trial, awarded each party the

---

[1] The record does not indicate how much defendant's bonus was or how it was computed.

[2] As with defendant's bonus, the record does not indicate how plaintiff's possible bonus would be calculated.

assets they brought into the marriage, amounting to $334,053.81 for defendant and $50,769.46 for plaintiff.[3] In addition, the trial court excluded defendant's retirement package from the marital assets, deciding instead to treat it as income rather than property. The remaining value of the marital estate, including each party's Michigan Credit Union retirement plan and Mutual of America TDA, plaintiff's Huntington Bank stock, and all the appreciation of these assets, was divided equally between the parties. Subsequently, the trial court granted plaintiff's motion to exclude her Huntington Bank stock from the marital estate. The trial court further determined that instead of dividing the marital estate equally, defendant would be awarded fifty-five percent of the estate "[g]iven the age disparity of the parties and their present and future earning potential."[4] Accordingly, the judgment of divorce was entered on November 4, 1998. In addition, on January 6, 1999, a qualified domestic relations order was entered, pursuant to the judgment of divorce, awarding plaintiff $326,945.26 of defendant's Mutual of America TDA.

## II. STANDARD OF REVIEW

In a divorce action, this Court's review of the trial court's factual findings is limited to clear error. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992); *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990); *Pelton v Pelton*, 167 Mich App 22, 25; 421 NW2d 560 (1988). A finding is clearly errone-

---

[3] The parties stipulated these amounts during the trial.

[4] At the time of the trial, defendant was seventy-two years old, whereas plaintiff was forty-four years old.

ous if, after a review of the entire record, the review-
ing court is left with a definite and firm conviction
that a mistake has been made. *Beason, supra* at 802;
*Draggoo v Draggoo*, 223 Mich App 415, 429; 566
NW2d 642 (1997). If the trial court's findings of fact
are upheld, we then must decide whether the disposi-
tive ruling was fair and equitable in light of those
facts. *Sparks, supra* at 151-152; *Welling v Welling*, 233
Mich App 708, 709; 592 NW2d 822 (1999); *Draggoo,
supra* at 429. A dispositional ruling is discretionary
and should be affirmed unless this Court is left with
the firm conviction that the division was inequitable.
*Sands v Sands*, 442 Mich 30, 34; 497 NW2d 493
(1993); *Welling, supra* at 709-710; *Draggoo, supra* at
429-430. Further, assets earned by a spouse during
the marriage, whether they are received during the
existence of the marriage or after the judgment of
divorce, are properly considered part of the marital
estate. *Vander Veen v Vander Veen*, 229 Mich App 108,
110; 580 NW2d 924 (1998); *Byington v Byington*, 224
Mich App 103, 110; 568 NW2d 141 (1997). Generally,
marital assets are subject to division between the par-
ties, but the parties' separate assets may not be
invaded. *Reeves v Reeves*, 226 Mich App 490, 494; 575
NW2d 1 (1997).

### III. ANALYSIS

#### A. PARTIES' RETIREMENT FUNDS AND TDAS

On appeal, defendant argues that the trial court
erred by including each party's Michigan Credit Union
retirement fund and Mutual of America TDA in the
marital estate. Specifically, defendant contends that
because each party had made contributions to their

respective retirement funds and TDAS before the marriage, they were entitled to have part of the appreciation from these accounts excluded from the marital estate. We disagree.

In determining that the entire appreciation of the parties' retirement plans and TDAS should be included in the marital estate, the trial court relied on *Reeves*. There, this Court held that the marital estate did not include the appreciation in value of a party's premarital assets, if that appreciation was due to "wholly passive" appreciation. *Reeves, supra* at 497; see also *Dart v Dart*, 460 Mich 573, 585, n 6; 597 NW2d 82 (1999). However, here, each party's retirement fund and TDA did not appreciate solely because of passive investment. As stated previously, during the course of the marriage, each party contributed ten percent of their salary, up to the social security integration level, and then 15.7 percent after that amount, up to a maximum of $150,000, to their separate retirement funds. Thus, while there is evidence that the parties contributed the same percentage of their salaries to their respective retirement plans, there is no evidence that the parties contributed an equal dollar amount to their retirement plans during the marriage. Instead, the evidence only indicated that each party contributed a percentage of their income to the plans and that they each contributed $9,500 a year to their separate TDAS. Further, the evidence indicated that these funds were commingled with funds each party contributed before marriage. Thus, the assets in these "premarital accounts" did not increase in value because of "wholly passive" appreciation, *Reeves, supra*, but instead by additional contributions, as well as appreciation. Thus, because of the parties' commingling of

premarital and marital assets, it is not possible to accurately determine the premarital appreciation of these assets. *Reeves, supra* at 496-497; see also *Dart, supra* at 585, n 6 ("We recognize that, in certain situations, a spouse's separate assets, or the appreciation in their value during the marriage, may be included in the marital estate.") Accordingly, the trial court correctly held that the entire appreciation of the retirement funds and TDAs were part of the marital estate.[5]

### B. PROPERTY DIVISION FACTORS

On cross appeal, plaintiff argues that the trial court clearly erred in failing to make specific findings of fact on relevant property division factors. We agree. In reaching an equitable division of the marital estate, the trial court is to consider the following factors whenever they are relevant to the circumstances of the particular case:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks, supra* at 159-160.]

See also *Welling, supra* at 710, quoting *Byington, supra* at 115. Because of the wide array of factual circumstances involved in a divorce proceeding, the determination of relevant factors varies depending on the case. *Sparks, supra* at 160. Hence, there is no

---

[5] In addition, we note that the principal amount contributed by each party to their respective retirement and TDA accounts, before their marriage, was properly removed from the marital estate as part of the stipulated premarital assets. *Reeves, supra* at 494.

rigid framework for applying the relevant factors. *Id.* at 158-159. Nonetheless, where any of these factors are relevant to the value of the property or to the needs of the parties, the trial court must make specific findings of fact regarding those factors. *Id.* at 159. In so doing, the trial court must not assign disproportionate weight to any one circumstance. *Id* at 158.

Here, the trial court's July 21, 1998, opinion considered fault and contributions of each party to the marital estate, as well as the earning abilities of each party, and determined that a "fifty-fifty division" of the marital assets would be an appropriate distribution. However, in its revised opinion of September 22, 1998, the trial court held that "given the age disparity of the parties and their present and future earning potential[,]" it would be more equitable to split the marital assets "fifty-five to forty-five in favor of [d]efendant." Thus, while there was evidence on the record regarding the duration of the marriage and the life status, necessities, and circumstances of the parties, the trial court made no findings of fact regarding these factors. See *Sparks, supra* at 162. In addition, there is no finding on the record that indicates that the trial court used other general principles of equity that might have been relevant to the property division. Further, while each factor need not be given equal weight, *Welling, supra* at 710; *Byington, supra* at 115, it appears as if here the trial court placed disproportionate weight on its nonspecific findings regarding the age and earning abilities of the parties. See *Sparks, supra* at 160. Therefore, we conclude that it is necessary to remand this case to the trial

court so that it can make further findings of fact regarding the relevant property division factors.

C. DEFENDANT'S RETIREMENT PACKAGE

Plaintiff also argues that defendant's retirement package from CCC, instead of being treated as defendant's separate property, should have been included in the marital estate. As previously stated, assets earned by a spouse during the marriage are properly considered part of the marital estate. *Vander Veen, supra* at 110; *Byington, supra* at 110. This is true whether the assets are received during the existence of the marriage or after the judgment of divorce. *Id.* In addition, the separation of the parties before the date of the actual divorce is not relevant when determining what assets comprise the marital estate. *Id.* at 113.

Here, the trial court awarded defendant the full amount of his retirement package:

> Joint Exhibit 1 lists the sum of $168,034.47 as a marital asset, being NBD Account #187985-75. Testimony at trial indicated that most of these amounts were deposited after the parties' physical separation and were made up of bonus and other compensation associated with defendant's severance agreement and retirement package. Given the disparity of the parties' future income and earning potential, this Court will exclude all of this sum from its compilation of marital assets, choosing to treat said monies more like income rather than property.

We agree with plaintiff that, if any of the retirement package was earned during the marriage, then that portion of the package must be considered part of the marital estate. *Byington, supra* at 110. Therefore, on remand, we instruct the trial court to determine, with-

out regard as to when the parties separated, *id.* at 113, whether defendant's retirement package was, in fact, earned during the marriage and, if so, whether, in the context of the entire marital estate, the current division of defendant's retirement package was equitable. *Id.* at 117. Consequently, on remand, the trial court may again conclude that the whole retirement package should be awarded to defendant, or it may, in light of the *Sparks* factors, decide to award a portion of the package to plaintiff. *Id.* In any event, the trial court must include any part of defendant's retirement package that was earned during the marriage as part of the marital estate.

### D. EQUITABLENESS OF THE PROPERTY DIVISION

Finally, plaintiff argues that the trial court did not adequately explain its division of the marital assets, and that the division was inequitable. In dividing marital assets, the goal is to reach an equitable division in light of all the circumstances. *Welling, supra* at 710; *Byington, supra* at 114. While the division need not be mathematically equal, *Welling, supra* at 710; *Byington, supra* at 114-115, an equitable distribution of marital assets means that they will be roughly congruent, *id.* at 115; *Knowles v Knowles*, 185 Mich App 497, 501; 462 NW2d 777 (1990), and any significant departures from congruence must be clearly explained by the trial court, *Welling, supra* at 710; *Byington, supra* at 114-115.

The trial court's disposition of marital property is intimately related to its findings of fact. *Sparks, supra* at 162, n 31, citing *Beason, supra* at 798. In *Sparks, supra* at 162, the Supreme Court stated that, where the case had to be remanded for further find-

ings of fact regarding the relevant property division factors, "[t]he most effective appellate review [of the property division] obviously would result from more thorough fact finding." Similarly, in the instant case, because the trial court explicitly excluded defendant's retirement package from the marital property, see *Byington, supra* at 117, and because it failed to articulate which *Sparks* factors were relevant, it would be difficult for us to effectively review the marital property division for fairness. Thus, because this case is being remanded for further factual findings, we cannot reasonably determine at this time whether the property division before us is equitable. Cf. *Sparks, supra* at 163, citing MCR 2.517.

### IV. CONCLUSION

In sum, we affirm the trial court's decision to include the parties' Michigan Credit Union retirement plans and their Mutual of America TDAs in the marital estate, reverse, on the basis of insufficient factual findings, the trial court's exclusion of all of defendant's retirement package from the marital estate, and remand for further proceedings consistent with this opinion.

The trial court is to hear and decide the matter within 120 days of the release of this opinion.

Affirmed in part, reversed in part, and remanded. This Court retains jurisdiction.

ZAHRA, J., concurred.

WHITE, P.J. (*concurring in part and dissenting in part*). I agree that the trial court correctly determined that the entire appreciation of the Michigan Credit

Union retirement funds and Mutual of America tax-deferred annuities during the marriage was part of the marital estate and thus join in § III A, *ante* at 183-185, of the majority opinion.

I do not, however, agree with the majority that the trial court failed to make sufficiently specific findings of fact regarding the property division or that it is necessary to remand to determine whether the fifty-five percent/forty-five percent division of the marital property was equitable. Thus, I dissent from § III B, *ante* at 185-187, and § III D, *ante* at 188-189, of the majority opinion. Regarding defendant's retirement/severance package from Credit Counseling Centers (CCC), I conclude that the trial court did not err in treating the payments as income, but would remand for reconsideration of certain payments received during the marriage.

I

The trial court's opinion of July 21, 1998, which is referred to in the judgment of divorce, states in pertinent part:

> Plaintiff, Jane Ellen McNamara, and Defendant, Albert Octave Horner, were married on December 18th 1987. There were no children born of this marriage. Plaintiff was born on August 19, 1954, (now 44), and Defendant was born on March 7, 1926, (now 72).
>
> Plaintiff filed her complaint for divorce on October 24, 1996, to which an answer to complaint was filed on May 7, 1997, with a counter-complaint for divorce and answer to counter-complaint having been filed on or about January 8, 1998.
>
> This is the second marriage of Defendant, who has four adult children by his prior marriage, and the third marriage of Plaintiff, to whom no children have been born. Defen-

dant, who has two years of college courses, founded Credit
Counseling Centers, Inc., in 1963 [sic 1961[1]]. At the time of
the marriage he was the president and CEO of Credit Coun-
seling Centers, Inc. Plaintiff possesses a master's degree in
family and money management and at the time of the mar-
riage was administrative assistant to Defendant. She had
worked for the company for approximately seven years
prior to the marriage.

Subsequent to their marriage, Plaintiff assumed an execu-
tive position with Credit Counseling Centers, Inc., and
Plaintiff's anticipated replacement of Defendant as presi-
dent and CEO of Credit Counseling Centers, Inc., has now
occurred.

*Each of the parties have, during the course of their mar-
riage in their executive positions, enjoyed substantial
compensation which will continue for Plaintiff, with
Defendant now being limited to the compensation received
annually for three years, pursuant to the provisions of the
confidential release agreement, consulting agreement, and
nondisclosure and agreement not to compete entered into
October 22, 1997, between Defendant and Credit Counsel-
ing Centers, Inc.*

After trial, both sides agreed to submit proposed findings
of fact and conclusions of law and the Court took the mat-
ter under advisement.

*FINDINGS OF FACT AND CONCLUSION [sic] OF LAW*

The Court finds a breakdown in the marital relationship
to the extent that the objects of matrimony have been
destroyed and there remains no reasonable likelihood that
the marriage can be preserved. Thus, the Court will grant
an absolute judgment of divorce to Plaintiff. Fault does not
appear to be an issue in this case. Sadly, the parties appear
to have just grown apart.

*Property Division*

It is undisputed that this Court has jurisdiction of the
within cause and that a Judgment of Divorce should be

---

[1] Defendant testified that he was one of the persons who originally
founded CCC, in August 1961.

granted. *The major issues in dispute are the manner of property division in view of the premarital assets of the respective parties, the passive growth of same, and determining the appropriate date of valuation for said property division.*

[discussion of applicable law and
the date of valuation omitted]

. . . . In exercising its discretion [to determine the date of valuation], this Court does note that evidence was presented that the parties maintained a joint checking and savings account during the pendency of their marriage until January 23, 1998, out of which joint obligations, such as the mortgage on the marital home, were paid. All of the parties' employment compensation went into these accounts. And, throughout the marriage, the parties used these funds to keep up their premarital and postmarital assets. Accordingly, this Court finds that the case of *Byington v Byington*, 224 Mich App 103 (1997) is controlling.

\* \* \*

*Summary of Marital Assets*

Joint Trial Exhibit No. 1 summarizes all of the assets which the parties agree identify all of the assets of the parties, either jointly or separately. . . .

\* \* \*

Joint Exhibit 1 lists the sum of $168,034.47 as a marital asset, being NBD Account [ ]. Testimony at trial indicated that most of these amounts were deposited after the parties' physical separation and were made up of bonus and other compensation associated with defendant's *severance agreement and retirement package. Given the disparity of the parties' future income and earning potential, this Court will exclude all of this sum from its compilation of marital assets, choosing to treat said monies more like income rather than property.* [Emphasis added.]

The trial court awarded the parties the values of their respective premarital assets and one-half of the mari-

tal estate, including the retirement accounts and plaintiff's Huntington Bank stock, and excluding defendant's severance package.[2]

Plaintiff filed a posttrial motion, which was addressed as follows in the trial court's September 22, 1998, opinion and order:

> In Plaintiff's first assertion of error, Plaintiff argues that the Huntington Bank stock, which was treated as marital property in the Court's July 21, 1998, Opinion, should, in reality, have been treated as separate property and not included in the division of the marital assets.
>
> After reviewing the matter, this Court agrees with Plaintiff's position. In so holding, it will be necessary for this Court to redivide the remaining marital assets as defined in this Court's Opinion of July 21, 1998. In dividing marital property, the Michigan Supreme Court in *Sparks v Sparks*, 440 Mich 141 (1992) has instructed Michigan trial courts to consider the following factors whenever they are relevant to the circumstances of a particular case in property division:
>
> Duration of the marriage.
>
> Contributions of the parties to the marital estate.
>
> Age of the parties.
>
> Health of the parties.
>
> Life status of the parties.
>
> Necessities and circumstances of the parties.
>
> Earning abilities of the parties.
>
> Past relations and conduct of the parties.
>
> General principles of equity.
>
> Any additional factors relevant to a particular case, such as the interruption of a party's career or education.

---

[2] Under the initial distribution, plaintiff received $1,081,260.56 in marital property, and $50,769.46, representing premarital assets, for a total of $1,132,030.32. Defendant received $1,081,260.57 in marital assets, $334,053.81, representing premarital assets, and $168,034.47 as proceeds from the severance agreement, for a total of $1,583,348.75.

In weighing the foregoing factors, a court must not assign disproportionate weight to any one factor. Id at 158. The Supreme Court articulated the following guidelines:

"It is not desirable, or feasible, for us to establish a rigid framework for applying the relevant factors. The trial court is given broad discretion in fashioning its rulings and there can be no strict mathematical formulations . . . . But . . . while the division need not be equal, it must be equitable . . . . Just as the final division may not be equal, the factors to be considered will not always be equal. Indeed, there will be many cases where some, or even most, of the factors will be irrelevant. But where any of the factors delineated . . . are relevant to the value of the property or to the needs of the parties, the trial court shall make specific findings of fact regarding those factors . . . ." Id., at 158-159.

*In applying the above-referenced principles, the Court has already found certain factors as articulated in its Opinion of July 21, 1998.* By taking out the Huntington stock, *the Court feels that an equal division of the property would not be equitable. Rather, a fifty-five to forty-five percent split in favor of Defendant would be more appropriate under the circumstances of this case. Given the age disparity of the parties and their present and future earning potential, such a division appears fair.*[3] [Emphasis added.]

The trial court's opinions set forth facts regarding the duration of the marriage, contributions to the marital estate, life status, fault,[4] earning abilities, ages, and education. As the trial court noted, the issues had been narrowed considerably before trial. I conclude that the trial court considered and made

---

[3] Under the revised distribution, plaintiff received $807,414.64 in marital assets, $50,769.46 representing premarital assets, and $402,000 in Huntington Bank stock, for a total of $1,260,184.10. Defendant received $986,840.11 in marital assets, $334,053.81, representing premarital assets, and $168,034.47 severance proceeds, for a total of $1,488,928.39.

[4] The court found neither party solely responsible for the breakdown of the marriage, but rather, that they had grown apart.

specific findings of fact concerning the factors relevant to this case. *Sparks v Sparks*, 440 Mich 141, 160; 485 NW2d 893 (1992). The factual findings were adequate and were not clearly erroneous.[5]

II

Defendant's retirement/severance package[6] from CCC consisted of a consulting fee, to be paid out over three years beginning in 1998, a pension contribution, a payment in exchange for a release, bonus payments for 1996 and 1997, and benefits including health, life, long-term care and liability insurance, an automobile lease, country club membership dues, and expenses associated with CCC business. The documents also included an agreement not to compete and a release.

---

[5] I note that plaintiff's counsel's opening statement was similar to the trial court's statement of the facts in its July 21, 1998, opinion:

> Your Honor, the evidence in this case will show, in accordance with the factors set forth in the case of *Sparks v Sparks*, that this is a ten-year marriage, that both of the parties worked throughout the duration of this marriage for the same corporation, and both of these parties made equal contributions, while working, to this marital estate. Not necessarily in terms of the income they contributed, but in terms of the efforts that they contributed.
>
> The evidence of this case will show that my client is now 43 years old, and her husband is 72 years old. The evidence will show, or the lack of evidence will show that neither party is complaining of any health problem would [sic] be relevant to the *Sparks* factors.
>
> The life status of the parties, the evidence in this case will show, that my client continues to work for the Credit Counseling Center, and that Mr. Horner, although he is retired from that company, is serving as a consultant, and is being compensully (phonetic)— handsomely compensated for his services.
>
> But the real evidence that we're talking about here today, that this case will show, is that these people, between them, have approximately 2.9 million dollars . . . .

[6] The circuit court reviewed this confidential package in camera.

Defendant deposited in a National Bank of Detroit (NBD) account part or all of the monetary portion he received in 1998 from the CCC retirement/severance package, and the bonus he received in 1998 for 1997, his last year of employment with CCC. The trial court concluded regarding this NBD account:

> Joint Exhibit 1 lists the sum of $168,034.47 as a marital asset being NBD Account []. Testimony at trial indicated that most of these amounts were deposited after the parties' separation and were made up of bonuses and other compensation associated with Defendant's severance agreement and retirement package. *Given the disparity of the parties' future income and earning potential, this Court will exclude all of this sum from its compilation of marital assets, choosing to treat said monies more like income rather than property.* [Emphasis added.]

I think it clear from the trial court's decision that the court understood that the severance payments were a marital asset in the sense that the $168,034.47 was listed as such on the exhibit and at least some of the payments were made during the marriage. The court, however, also considered, as the majority directs it to do on remand, whether in the context of the entire marriage, a division of the proceeds of the severance package would be equitable.

Defendant cofounded CCC in August 1961 and was its president and chief executive officer (CEO) until his retirement on December 31, 1997. When the parties married in December 1987, defendant had been at CCC for more than twenty-six years. Plaintiff filed for divorce in October 1996, at which time she was chief financial officer of CCC. Plaintiff testified that it had been anticipated since May 1994 that she would take defendant's place as president and CEO of CCC upon

his retirement. At the time of trial in March 1998, plaintiff was president and CEO of CCC and was forty-three years old, while defendant had retired and was seventy-two years old. There was no reason to believe that plaintiff's employment as the CEO of CCC would not continue, with her earning compensation, bonuses, pension payments, and fringe benefits similar to those the parties had enjoyed in the past. While the three-year severance package may not have been the exact equivalent of plaintiff's expected compensation over the three-year period, there was sufficient parity to justify the court's decision to treat the severance proceeds "more like income rather than property."

I would, however, remand for further fact-finding with instructions to the court to reconsider the distribution of the payments received during the marriage to the extent that comparable payments to plaintiff had already been received and were treated as marital property. Thus, if the court determines that plaintiff's 1996 and 1997 bonuses were paid before trial and were incorporated into the marital estate, defendant's comparable bonuses should be similarly treated, or plaintiff's bonuses should be awarded to her as separate income.[7] Likewise, to the extent that plaintiff's 1998 compensation was treated as marital property, a proper adjustment should be made.

In sum, while I join in § A of the majority opinion, I further conclude that the trial court's two opinions

---

[7] There was, in fact, testimony regarding the parties' bonuses and how they were computed, including that CCC began paying bonuses on a regular basis within the five years before trial, that both parties had received bonuses for the last five years, that the amount of the bonuses was up to fifty percent of base salary, and that bonuses were generally paid out during the calendar year following the year to which the bonus applied.

sufficiently explain the court's decision to divide the marital assets 45/55, that the division was equitable given the parties' life status, including the disparity in the parties' ages and earning potential, and that the court was justified in treating the severance payments more like income than property. Thus, I would affirm, except with regard to the limited issue set forth above.