# STATE OF MICHIGAN

# COURT OF APPEALS

JACQUELINE MARIE RIPLEY,

Plaintiff-Appellant,

v

THOMAS MICHAEL RIPLEY,

Defendant-Appellee.

UNPUBLISHED
July 14, 2016

No. 327285
Kalamazoo Circuit Court
LC No. 2013-006197-DO

Before: MURRAY, P.J., and SAWYER and METER, JJ.

PER CURIAM.

Plaintiff appeals as of right the September 17, 2014 judgment of divorce. We affirm in part, reverse in part, and remand.

Plaintiff argues that the trial court erred when it allocated two assets to defendant, i.e., defendant's accounts receivable at his law firm and a GTO, without including the value of those assets in the marital estate. Plaintiff also argues that the trial court's division of the marital estate was inequitable. In a divorce action, a trial court must make findings of fact and dispositional rulings. *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). We first review a trial court's findings of fact for clear error. *Id.* "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made." *Id.* If we uphold the trial court's findings of fact, we must then decide whether the dispositional ruling was fair and equitable in light of those facts. *Id.* "The court's dispositional ruling should be affirmed unless this Court is left with the definite and firm conviction that the division was inequitable." *Pickering v Pickering*, 268 Mich App 1, 7; 706 NW2d 835 (2005).

Plaintiff claims that the trial court erred in valuing defendant's accounts receivable at Liggett & Ripley, PLC at $0. A trial court must make specific findings regarding the value of the property. *Olson v Olson*, 256 Mich App 619, 629; 671 NW2d 64 (2003). A trial court is obligated to make a valuation of an asset if the value is in dispute. *Id.*

A trial exhibit, which had been prepared by defendant, showed that defendant's accounts receivable totaled $40,982.92. According to the exhibit, defendant would "probably never see" $15,274.20. A "realistic" amount that he could collect was $25,711.72. However, at trial, defendant testified that he would not be able to collect on any of the accounts receivable. He had

-1-

been bugging those clients "forever," and they did not have the money to pay. When it divided the marital estate, the trial court stated that it was not giving any value to the accounts receivable. It further explained, when it denied plaintiff's motion for reconsideration, that it believed defendant's testimony over the exhibit.

We give special deference to a trial court's findings when they are based on the credibility of witnesses. *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997). Because the trial court found defendant's testimony that he was unlikely to collect on the accounts receivable credible, we are not left with a definite and firm conviction that the trial court make a mistake in finding that the accounts receivable had no value. *Woodington*, 288 Mich App at 355. We affirm the trial court's valuation of the accounts receivable.

Plaintiff also claims that the trial court erred when it failed to include the value of the GTO in the assets that it awarded defendant. This failure by the trial court does not make any difference in the case. Plaintiff and defendant stipulated that the value of the GTO was $54,363, and this stipulation was binding on the trial court. See *Staff v Johnson*, 242 Mich App 521, 535; 619 NW2d 57 (2000). Additionally, the trial court found that the amount of the loan on the GTO was $30,465. The trial court specifically assigned the GTO's debt, but not its value, to defendant. Regardless, it is clear from the trial court's statements that it awarded the GTO's entire value to defendant. Accordingly, defendant's share of the marital estate included the value of the GTO. And, in analyzing plaintiff's next argument that the trial court's distribution of the marital estate was inequitable, we will include the GTO's value in the share given to defendant.

The goal in distributing the marital estate is to reach an equitable distribution of property in light of all the circumstances. *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008). A trial court need not divide the marital estate into mathematically equal portions, but an equitable distribution of the marital estate means that the division will be roughly congruent. *McNamara v Horner*, 249 Mich App 177, 188; 642 NW2d 385 (2002). Any significant departure from congruence must be clearly explained. *Id.* The following factors are to be considered by a trial court whenever they are relevant to the circumstances of the case:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).]

The determination of which factors are relevant will vary with the circumstances of each case, and no one factor should be given undue weight. *Woodington*, 288 Mich App at 363. A trial court must make specific findings regarding the factors it determines to be relevant. *Id.* at 363-364. The trial court's distribution of the marital estate is intimately related to its findings of fact. *Gates v Gates*, 256 Mich App 420, 423; 664 NW2d 231 (2003).

The trial court began its division of the marital estate by dividing the liabilities. It assigned the following debts to plaintiff: (1) a Victoria's Secret credit card, $758; (2) a bill from Dr. Thayer, $511; (3) a loan owed to Joe Jerkins, $50,000; (4) a bill from Reiman, $4,510; (5) a Discover credit card, $7,464; (6) a Macy's credit card, $3,547; (7) a Target credit card, $15,898;

(8) a Sears credit card, $11,302; (9) a MasterCard, $22,665; and (10) a PNC line of credit, $19,706. The total amount of debt assigned to plaintiff was $136,361. The trial court assigned the following debts to defendant: (1) a loan owed to Mike Kasten, $25,000; (2) another loan owed to Kasten, $100,000; (3) the loan for the GTO, $30,465; (4) his student loans, $22,750; (5) a Fifth Third business loan, $36,719; (6) another Fifth Third business loan, $781; (7) a Discover credit card, $6,489; and (8) PNC line of credit, $14,612. The total amount of debt assigned to defendant was $236,816.

The trial court ordered that the marital home be sold and that the proceeds, following payment of the two mortgages, be split between plaintiff, who was to receive 40%, and defendant, who was to receive 60%. If the marital home sold for the appraised value of $470,000, the amount of proceeds to be split by the parties would be $92,280.[1] The trial court also ordered that the following assets be sold with the profits split 40/60 between plaintiff and defendant, respectively: (1) the vacant land owned by Liggett & Ripley, $40,500; (2) a Buick Roadmaster, $2,417; (3) a Harley Hummer, $5,500; (4) a Ferrari go-cart, $2,500; (5) a Corvette go-cart, $2,500; (6) vintage mini-bikes, $18,204; (7) three snowmobiles, $5,400; and (8) a boat, $15,000. The trial court also ordered that a Chevrolet Suburban be sold, although the parties did not stipulate to a value of the Suburban, nor did the trial court give it a value. Additionally, the trial court ordered that the parties split 109 personal property items and that any of the items on which the parties could not agree be sold. Plaintiff's 40% share of the assets to be sold was $73,721, while defendant's 60% share was $110,580.

Numerous assets were kept by the parties. Plaintiff was allowed to keep the following assets: (1) a Fifth Third IRA, $4,804 and (2) a State Farm life insurance policy, $1,322. Defendant was allowed to keep the following: (1) a Fifth Third IRA, $4,220; (2) a State Farm life insurance policy, $1,399; (3) another State Farm life insurance policy, $919; (4) the office building of Liggett & Ripley, $82,500; (5) the office furniture, $1,475; (5) a Fifth Third business account, $4,412; and (6) the GTO, $54,363. The trial court also ordered that two credit union accounts, with balances of $258 and ($20) be split, with plaintiff receiving 40% and defendant receiving 60%. Additionally, the trial court allowed the parties to keep their vehicles. Plaintiff kept a 2002 Mercedes, while defendant kept a 2006 Jeep. The parties did not stipulate to values of these two vehicles, nor did the trial court place values on them. The total of the assets kept by plaintiff was $6,221, while the assets kept by defendant totaled $149,431.

Not including the three vehicles for which the trial court did not give a value and the 109 personal property items that could potentially be sold, the total amount of the assets of the marital estate, both retained and sold, was $339,953. The total amount of the parties' debt was $373,177. Thus, the marital estate had a value of ($33,224). Plaintiff was assigned $136,361 in debt, while receiving assets worth $79,942. Her share of the marital estate had a value of

---

[1] The trial court miscalculated when it stated that, if the marital home sold for $470,000, $190,000 would remain in proceeds after the two mortgages were paid. The mortgages had balances of $226,726 and $150,994. After payment of the mortgages, there would be $92,280 remaining in proceeds.

($56,419). Defendant was assigned $236,816 in debt, while receiving assets worth $260,011. His share of the marital estate was $23,195. This distribution is a significant departure from rough congruence. *McNamara*, 249 Mich App at 188.

Although the trial court stated that it considered the *Sparks* factors in the distribution of the marital estate, it made no findings regarding them. Because a trial court's distribution is intimately related to its findings of fact, *Gates*, 256 Mich App at 523, and because the trial court made no findings on the *Sparks* factors, we are unable at this time to effectively review the fairness of the trial court's distribution. See *McNamara*, 249 Mich App at 189. Accordingly, we remand so that the trial court can make findings on the *Sparks* factors and state those findings on the record. On remand, the trial court may, but need not, change the debts assigned or the assets awarded to plaintiff and defendant or the value of any debt or asset.

Plaintiff also argues that the trial court erred in denying her request for attorney fees. We review a trial court's decision whether to award attorney fees in a divorce action for an abuse of discretion. *Loutts v Loutts (After Remand)*, 309 Mich App 203, 215-216; 871 NW2d 298 (2015). Any findings of fact on which the trial court bases its decision are reviewed for clear error, and any issues of law are reviewed de novo. *Id.* at 216.

In a divorce action, a party may request that the trial court order the opposing party to pay all or part of the attorney fees and expenses related to the action. MCR 3.206(C)(1). As relevant to this case, a party who requests attorney fees and expenses must allege facts sufficient to show that "the other party is unable to bear the expense of the action, and that the other party is able to pay[.]" MCR 3.206(C)(2)(a). Attorney fees should be awarded "only as necessary to enable a party to prosecute or defend a suit." *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010) (citation and quotation marks omitted). "[A] party sufficiently demonstrates an inability to pay attorney fees when the party's yearly income is less than the amount owed in attorney fees." *Id.* However, this is "merely . . . one way" a party may demonstrate an inability to pay. *Loutts (After Remand)*, 309 Mich App at 217. Whether a party has an inability to pay is dependent on "the particular facts and circumstances of each case." *Id.* A trial court must "give special consideration to the specific financial situations of the parties and the equities involved." *Id.* at 218. A party may not be required to invade her assets to pay attorney fees if the party is relying on those assets for support. *Myland*, 290 Mich App at 702.

The trial court committed legal error by applying the wrong analysis when it denied plaintiff's request for attorney fees. First, contrary to caselaw, see *Loutts (After Remand)*, 309 Mich App at 217, the trial court treated as dispositive the fact that plaintiff's income was greater than her attorney fees. Second, the trial court stated that no caselaw required it to consider plaintiff's debt. However, a party's inability to pay is dependent on the "particular facts and circumstances" of the case, and consideration must be given to the "specific financial situations of the parties." *Id.* at 217-218. The "specific financial situations of the parties" includes the debt held by them.

Because the trial court used the wrong analysis in deciding plaintiff's request for attorney fees, we reverse the trial court's decision denying the request and remand for a new determination. On remand, the trial court must give "special consideration to the specific financial situations of the parties" to determine whether plaintiff is unable to bear the expense of

the divorce action and whether defendant is able to pay. MCR 3.206(C)(2)(a); *Loutts (After Remand)*, 309 Mich App at 218; *Myland*, 290 Mich App at 703.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. No costs, neither party having prevailed in full. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Patrick M. Meter