*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OLENA SKIBA,

　　　　　Plaintiff-Appellee,

v

MARK MICHAEL SKIBA,

　　　　　Defendant-Appellant.

UNPUBLISHED
February 22, 2024

No. 361742
Berrien Circuit Court
LC No. 2020-002774-DO

Before: HOOD, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

In this divorce action, defendant appeals as of right the property division ordered in the trial court's judgment of divorce. We affirm the trial court's ruling regarding the division of defendant's 401(k), but remand for further findings on the division of the proceeds of the sale of the marital residence.

The parties married in July 2004, and plaintiff filed for divorce in August 2020. At the time of the divorce hearing, plaintiff was 53 years old, and defendant was 69 years old. No children were born of this marriage.

Defendant's only argument on appeal is that the trial court abused its discretion by awarding plaintiff 100% of the net proceeds from the sale of the marital residence, as this resulted in an inequitable property division. Plaintiff agrees that the award of full proceeds from the sale of the house "could have resulted in a disproportionate division in favor of either party," and therefore the matter "should be remanded to the trial court for further findings regarding the value of the marital home and division of same."

"In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property." *Hodge v Parks*, 303 Mich App 552, 554-555; 844 NW2d 189 (2014). "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. Special deference is afforded to a trial court's factual findings that are based on witness credibility." *Id.* at 555 (quotation marks and citations omitted). If we uphold the trial court's findings of fact, we must then determine "whether the dispositive ruling was fair and

equitable in light of those facts." *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). The dispositional ruling is discretionary and should be affirmed unless we are "left with the firm conviction that the division was inequitable." *Id*. at 152.

In *McNamara v Horner*, 249 Mich App 177, 185; 642 NW2d 385 (2002), quoting *Sparks*, 440 Mich at 159-160, this Court stated:

> In reaching an equitable division of the marital estate, the trial court is to consider the following factors whenever they are relevant to the circumstances of the particular case:
>
> > (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity.

"[W]here any of these factors are relevant to the value of the property or to the needs of the parties, the trial court must make specific findings of fact regarding those factors." *McNamara*, 249 Mich App at 186. This Court further explained:

> In dividing marital assets, the goal is to reach an equitable division in light of all the circumstances. While the division need not be mathematically equal, an equitable distribution of marital assets means that they will be roughly congruent, and any significant departures from congruence must be clearly explained by the trial court. [*Id*. at 188 (citations omitted).]

> Regarding the marital residence, the trial court found as follows:

> The property shall be listed for sale within 30 days immediately following this judgment, and the parties shall follow the recommendation of the realtor . . . . [Defendant] would be responsible—solely responsible for [any] costs incurred as a result of the mortgage forbearance, including any unpaid balance if due. [Plaintiff] is awarded 100 percent of the net proceeds of the sale of that property.

The trial court clarified that this award applied regardless of the amount of the sale proceeds. This ruling was based upon (1) the trial court's finding that, as to defendant's 401(k), "[e]ach party is awarded 50 percent of [defendant's] Fidelity 401(k), which amounts to $16,590. [Defendant] has already received his portion; [plaintiff] shall receive her portion from [defendant's] portion of the marital home," and (2) the court not awarding plaintiff spousal support.

We agree with the parties that the portion of the judgment awarding plaintiff 100% of the net proceeds from the sale of the house must be vacated, and the matter remanded for additional findings regarding the actual sale price of the house, and the amount of proceeds actually available for distribution, including whether defendant presented any credible evidence that he spent marital funds for the improvement of the house, as instructed by a realtor, for purposes of readying it for sale. See, e.g., *Woodington v Shokoohi*, 288 Mich App 352, 369; 792 NW2d 63 (2010) (stating

that the trial court's "failure to assign a value to several assets []or to determine the appropriate date for valuation[], leave this Court and the parties unable to assess whether the marital division was equitable"). The marital property was estimated to sell for anywhere between $250,000 to $325,000, and the property awarded to plaintiff would differ greatly depending on the actual sale price of the house. If the house sold at the low end of the range, the remaining equity would be enough to cover her share of the 401(k), but little else. Conversely, if it is at the higher amount, plaintiff may be receiving more than what is reasonably necessary in lieu of spousal support. Additionally, there are no findings as to why defendant should not receive at least some credit or equity for any necessary updates to the house that he may have made at the instruction of the realtor that increased the value, and ultimate price received, for the house. Therefore, further findings are required relative to the sale price of the home, the amount of equity remaining after all costs and deductions for the sale, and whether defendant is entitled to any credit or equity for improvements made to the house to increase its market value. If the court continues to deem an award of 100% of the equity to plaintiff as equitable, it need go no further.

In raising this argument, however, defendant argues that the trial court erred in its findings regarding the 401(k) and other property. In reviewing the record, we have no doubt that the trial court's findings regarding the dissipation of the 401(k) assets were not clearly erroneous. Regarding defendant's dissipation, defendant testified that between 2020 and 2021 he spent approximately $95,000 of marital funds, including the entirety of his 401(k) account, on necessary expenses. However, evidence showed that this amount was significantly more than the marital expenses had previously been. There was also a mutual restraining order regarding the dissipation of assets that the trial court indicated it could have held defendant in contempt for violating, but chose not to, instead opting to award plaintiff the full amount of the home's equity. The trial court reasonably determined that defendant already received his portion of the 401(k).[1]

We affirm the trial court's ruling regarding the division of defendant's 401(k), but remand for further findings on the trial court's division of the marital residence proceeds. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

/s/ Noah P. Hood
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado

---

[1] Defendant argues that the trial court should have held that plaintiff also dissipated marital assets. However, the approximately $10,000 plaintiff sent to her family in Ukraine before the divorce proceedings was not spent in violation of the mutual restraining order. Regarding the other approximately $10,000 that plaintiff withdrew for living expenses, it is unclear whether plaintiff withdrew this money before or after the mutual restraining order was entered. Plaintiff simply testified that she withdrew the money after she moved out of the marital residence, and the record shows that plaintiff was in debt because she could not keep up with her regular living expenses throughout the divorce proceedings. Therefore, even if plaintiff withdrew this money after the mutual restraining order was entered, the withdrawal would not be in violation of the restraining order because the order did "not prevent the parties from providing for the necessities of life or from engaging in transactions necessary in the ordinary course of business."