*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NAZEK A. GAPPY,

        Plaintiff-Appellant,

v

NORTON T. GAPPY,

        Defendant-Appellee.

UNPUBLISHED
September 19, 2019

No. 342861
Oakland Circuit Court
LC No. 2016-844740-DM

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's judgment of divorce, asserting that the trial court's division of property was inequitable. We affirm.

Plaintiff and defendant married in 2007. During the marriage, the parties maintained separate bank accounts. They are both attorneys with separate legal practices. In addition to his law practice, defendant spent approximately 15 hours a week, usually on weekends, working at his father's businesses without being paid, and he also provided legal services to family members without charging them. However, defendant's father provided defendant with rent-free office space and had also provided plaintiff with the same for a period of time. In 2016, the parties purchased the marital home for $375,000. Plaintiff paid the purchase price with funds from her own account, but defendant arranged for $100,000 to be transferred to plaintiff's account in connection with the purchase, and both parties' names were placed on the deed.

Plaintiff filed this action for divorce in August 2016. As relevant to this appeal, the trial court determined that the recently purchased home was a marital asset and it awarded each party half of its equity value. On appeal, plaintiff argues that the trial court erred by determining that the home was a marital asset instead of plaintiff's separate property, and by awarding defendant half of its equity value. Plaintiff also argues that the trial court erred by failing to impute to defendant a portion of the value of defendant's father's businesses for purposes of determining an equitable division of marital property, and by arriving at a property division that did not adequately consider defendant's fault for the breakdown of the marriage.

## I. AWARD OF MARITAL HOME

Plaintiff first argues that the trial court erred by awarding defendant half of their home's equity value. In divorce actions, findings of fact made in relation to the division of marital property are reviewed under the clearly erroneous standard. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992). Clear error occurs when "this Court is left with the definite and firm conviction that a mistake has been made." *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). We accord special deference to the trial court's factual findings with respect to credibility. *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997). "The court's dispositional ruling should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *Pickering v Pickering*, 268 Mich App 1, 7; 706 NW2d 835 (2005).

Typically, marital assets are subject to division between the parties, while the parties' separate assets are not. *McNamara v Horner*, 249 Mich App 177, 183; 642 NW2d 385 (2002). However, assets earned by a spouse during marriage are generally considered to be part of the marital estate. *Id*. In addition, even when an asset is one spouse's separate property, an increase in its value that occurred during the marriage can be deemed marital property when the other spouse assists, directly or indirectly, in the growth or acquisition of the asset. MCL 552.401 (permitting division of separate property to a spouse who "contributed to the acquisition, improvement, or accumulation of the property"); *Reeves v Reeves*, 226 Mich App 490, 494-495; 575 NW2d 1 (1997). For example, in *Hanaway v Hanaway*, 208 Mich App 278, 293-294; 527 NW2d 792 (1995), this Court held that the defendant's inherited stock in a family-owned company was available for division as marital property because the plaintiff's handling of child-rearing and domestic duties had freed the defendant to concentrate on growing the value of the company. This Court found that the defendant's stock had "appreciated because of defendant's efforts, facilitated by plaintiff's activities at home." *Id*. at 294.

## A. POSTNUPTIAL AGREEMENT

Plaintiff first argues that the trial court erred by failing to find that she was entitled to the marital home as her separate property pursuant to an alleged postnuptial agreement. We disagree.

"[U]nder Michigan law, a couple that is maintaining a marital relationship may not enter into an enforceable contract that anticipates and encourages a future separation or divorce." *Wright v Wright*, 279 Mich App 291, 297; 761 NW2d 443 (2008), citing *Day v Chamberlain*, 223 Mich 278; 193 NW 824 (1923). However, as explained in *Hodge v Parks*, 303 Mich App 552, 558-559; 844 NW2d 189 (2014):

> [P]ost-nuptial agreements are not invalid *per se*, because some postnuptial agreements may be intended to promote harmonious marital relations and keep the marriage together. In such situations, [t]he public policy objection to post-nuptial contracts . . . does not arise. If a postnuptial agreement seeks to promote marriage by keeping a husband and wife together, Michigan courts may enforce the agreement if it is equitable to do so. [Quotation marks and citations omitted; second alteration in original.]

In this case, the trial court rejected plaintiff's argument that the parties had an enforceable agreement that governed the disposition of the marital home. The court first noted that the parties had not reduced any alleged agreement to writing. Although plaintiff maintained that she and defendant had orally agreed that the marital home would be awarded to her as her separate property in the event of a divorce, plaintiff has presented no authority in support of her argument that any alleged oral agreement would be enforceable. And contrary to plaintiff's position, Michigan's statute of frauds, MCL 566.106, provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

The marital home was titled in the names of both parties. Plaintiff seeks to defeat defendant's record interest in the property by arguing that she was entitled to the home as her separate property under a postnuptial agreement. Because the alleged agreement pertains to an "interest in" real property, plaintiff is not entitled to enforce it absent a writing that satisfies the statute of frauds.

The trial court also found that the evidence did not support plaintiff's argument that the parties in fact entered into such an agreement. This finding is not clearly erroneous. Defendant's testimony indicates that while the parties initially may have planned for plaintiff alone to purchase and hold the home, plaintiff later agreed to accept $100,000 from defendant's family in exchange for placing defendant's name on the deed. Plaintiff does not dispute that she received $100,000, and she admitted that she and defendant both attended the closing and purchased the home. The trial court did not find credible plaintiff's assertion that the $100,000 was simply a "gift" to her. We defer to the court's credibility determination. Given the testimony and the trial court's superior ability to judge credibility, the court's finding that both parties contributed funds toward the joint purchase of the home is not clearly erroneous.

The trial court also noted that, even if the agreement was otherwise valid, it would likely be against public policy to uphold it because it appears that it was made in contemplation of divorce. This finding also is not clearly erroneous. Plaintiff cited her personal illness as the reason for the dismissal of her earlier 2015 divorce complaint, rather than any intention to remain married. At approximately the same time, she found the home and told defendant that she intended to purchase it separately. She did not testify that she entered into the agreement regarding the home in an effort to keep the marriage intact. To the contrary, she testified that she specifically told defendant that their marriage was not stable and that she wanted him to promise her that he would not make any claim to the home if the marriage "[went] south." This testimony, if accepted, supports the trial court's finding that the alleged agreement was entered into, at least initially, in contemplation of divorce, and thus was unenforceable.

For these reasons, the trial court did not err by rejecting plaintiff's argument that a valid postnuptial agreement governed the disposition of the marital home.

## B. SEPARATE FUNDS

Plaintiff also argues that it was inequitable for the trial court to award defendant half of the martial home's equity value where plaintiff purchased the home entirely with her own separate funds. We disagree.

In *Cunningham v Cunningham*, 289 Mich App 195, 201-202; 795 NW2d 826 (2010), this Court explained the difference between separate and marital property:

> The categorization of property as marital or separate . . . is not always easily achieved. While income earned by one spouse during the duration of the marriage is generally presumed to be marital property, there are occasions when property earned or acquired during the marriage may be deemed separate property. For example, an inheritance received by one spouse during the marriage and kept separate from marital property is separate property. Similarly, proceeds received by one spouse in a personal injury lawsuit meant to compensate for pain and suffering, as opposed to lost wages, are generally considered separate property. Moreover, separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property. The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital. [Quotation marks and citations omitted.]

With respect to the comingling of separate funds, this Court held that "[t]he actions and course of conduct taken by the parties are the clearest indicia of whether property is treated or considered as marital, rather than separate, property." *Id*. at 209.

Plaintiff argues that the parties' course of conduct indicates that they intended for the home to remain plaintiff's separate property. She notes that the parties kept their bank accounts separate and paid different household expenses. However, plaintiff does not address the general rule that funds earned during a marriage are to be considered marital property or its application here where evidence was presented that plaintiff's "separate" bank accounts apparently contained, to a large extent, income she had earned during the marriage. Further, although the $375,000 purchase-price payment came from plaintiff's own funds, plaintiff admitted that she accepted $100,000 from defendant's family, which was intended as defendant's contribution toward the purchase of the home. The evidence supports the trial court's finding that, regardless of the parties' intentions with respect to their separate bank accounts, they ultimately agreed to jointly purchase the marital home by combining their separate funds and hold the home in both of their names. See *id*. at 207-209.

## C. CONTRIBUTION TO MARITAL INCOME

Plaintiff also argues that the trial court should have awarded her all of the equity in the marital home because of her greater monetary contributions to the marital estate. The trial court, however, found that both parties had contributed equally to the marriage and this finding is not clearly erroneous. At trial, both parties testified about their respective responsibilities in paying bills and caring for their daughter. Defendant also explained how he and his family contributed

to plaintiff's ability to build her successful law practice. Plaintiff has not shown that the trial court's decision to award each party half of the marital home's value was inequitable.

## II. IMPUTATION OF INCOME AND ASSETS TO DEFENDANT

Plaintiff next argues that the trial court should have imputed income to defendant in consideration of the time he spent working at his father's gas station and providing legal services to his family. Plaintiff has presented no legal authority to support her position that a trial court may impute income to a party for purposes of determining an equitable division of property, rather than, for example, determining spousal or child support.[1] See, e.g., *Stallworth v Stallworth*, 275 Mich App 282, 284-285; 738 NW2d 264 (2007) (discussing court's authority to impute income for the purposes of child support). "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007).

Plaintiff also argues that the trial court should have treated a portion of the value of defendant's father's businesses as a martial asset to be allocated to defendant as part of his share of the marital estate. We disagree. Plaintiff relies on this Court's decision in *Hanaway* in support of this claim. In *Hanaway*, the plaintiff wife was a homemaker while the defendant worked "seven days a week and many late hours" at his family's business. *Hanaway*, 208 Mich App at 281. The defendant, who became president of the business, was gifted stock in the company annually until, at the time of the trial, he owned 41.23% of the company. *Id*. at 283. This Court held that the trial court erred by treating this property as separate property. *Id*. at 294. It reasoned that although the defendant husband was initially gifted the interest in the business, plaintiff's long-term commitment to running the household facilitated the defendant's ability to increase the business's value, which in turn profited the couple through the receipt of the defendant's salary. *Id*. at 293-294.

We agree with the trial court that this case is distinguishable from *Hanaway*. Unlike the defendant in *Hanaway*, defendant never acquired any legal interest in any of his father's businesses. At most, he arguably received remuneration in the form of free office space, as did plaintiff for a period of time. Defendant also testified that when his father died, his mother would be the initial beneficiary of the trust assets. And although defendant might inherit in the future, the trial court properly found that discerning the probable amount of any inheritance would be speculative, particularly given defendant's testimony that one of his brothers required funds for his own special needs and his other brother had loaned their father money over the years which was expected to be repaid by his father's estate. The trial court did not err when it refused to impute to defendant the value of assets over which defendant had no legal interest.[2]

---

[1] We note that the trial court did impute income to defendant for purposes of determining child support.

[2] Plaintiff's cursory citation to *Byington v Byington*, 224 Mich App 103; 568 NW2d 141 (1997) (addressing division of contingent compensation package the defendant became eligible to receive before entry of judgment of divorce), and *Wiand v Wiand*, 178 Mich App 137; 443

Similarly, the trial court did not abuse its discretion when it denied plaintiff's motion to reopen proofs on this issue following the death of defendant's father after trial had concluded, but before the court entered its judgment of divorce. When deciding a motion to reopen proofs, a court considers: "(1) the timing of the motion, (2) whether the adverse party would be surprised, deceived, or disadvantaged by reopening the proofs, and (3) whether there would be inconvenience to the court, parties, or counsel." *Mich Citizens for Water Conservation v Nestle Waters North America, Inc*, 269 Mich App 25, 50-51; 709 NW2d 174 (2005), rev'd in part on other grounds 479 Mich 280 (2007), overruled in part on other grounds by *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349 (2010). See also *Bonner v Ames*, 356 Mich 537, 541; 97 NW2d 87 (1959).

Plaintiff's motion was filed on February 5, 2018. Proofs had closed on October 16, 2017. The trial court found that defendant would be surprised and disadvantaged because plaintiff also sought to relitigate custody and parenting time decisions. The court further noted that the parties had already extensively litigated whether any value of defendant's father's businesses should be included as part of the marital estate. The court determined that reopening proofs "would be inconvenient to the parties and the court as the court has issued its opinion and order deciding the issues presented over a multi-day trial." Defendant's father died on January 12, 2018, and plaintiff's motion was filed after the trial court issued its opinion and order following the bench trial.[3] As discussed earlier, the underlying premise of plaintiff's argument—that the trial court could impute third-party assets to defendant in the absence of any legal right—lacked merit. While plaintiff averred "upon information and belief" that defendant and his brother had inherited the family businesses, she made no offer of proof to support this assertion. To the contrary, according to the trial testimony, defendant's mother was the initial beneficiary of defendant's father's estate. Plaintiff's assertion that defendant was now working full time at the gas station was irrelevant to the question whether his activities during the marriage justified imputation. Given these factors, plaintiff has not demonstrated that the trial court abused its discretion by denying her request to reopen proofs.

## III. FAULT

Finally, plaintiff argues that the trial court erred by failing to adequately consider defendant's fault in the breakdown of the marriage when determining an equitable property division. We disagree.

"The goal of the court when apportioning a marital estate is to reach an equitable division in light of all the circumstances." *Byington v Byington*, 224 Mich App 103, 114; 568 NW2d 141

---

NW2d 464 (1989) (discussing value of advanced degree as asset of marital estate subject to distribution upon divorce), is similarly unavailing because both cases involved assets in which the party holding the asset had an established legal interest.

[3] The opinion and order was signed by the trial court on February 2, 2018, and entered in the register of actions on February 5, 2018.

(1997). To that end, the trial court considers the following factors to the extent they are relevant to the circumstances of the case:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*McNamara*, 249 Mich App at 185, quoting *Sparks*, 440 Mich at 159-160.]

Plaintiff argues that the trial court should have awarded her a greater portion of the assets, presumably the entire value of the marital home, because defendant's absence and alcoholism contributed to the breakdown of the marriage. Fault or misconduct by one spouse can be considered as a factor in equitably dividing a marital estate. *Sparks*, 440 Mich at 158. However, the court may not give "disproportionate weight to any one circumstance." *Id*. "The trial court is given broad discretion in fashioning its rulings . . . ." *Id*. at 158-159. There is no "rigid framework for applying the relevant factors," and "there can be no strict mathematical formulations." *Id*.

Given the trial testimony, plaintiff has not shown that the trial court's property division and decision to divide the marital home equally was inequitable despite its finding that defendant's conduct "contribute[d] to the breakdown of the marriage." The trial court found that both parties contributed equally to marital expenses and child rearing and, while plaintiff disputes this, the court was in a greater position to determine witness credibility. The instant case does not contain any allegations of marital infidelity, domestic violence, or other evidence of egregious conduct by defendant. The trial court considered plaintiff's allegation that defendant had an alcohol abuse problem. The evidence of defendant's alleged alcohol abuse was vague and, although plaintiff alleged that defendant's alcohol consumption contributed to his health problems and plaintiff complained that defendant would spend time drinking or sleeping rather than working or performing other household duties, plaintiff did not contend that defendant acted inappropriately toward her or their child while intoxicated. Plaintiff has not shown that the trial court's property division is inequitable in light of the parties' relative fault for the breakdown of the marriage.

## IV. DEFENDANT'S CLAIMS OF ERROR

In his brief on appeal, defendant also challenges various aspects of the trial court's property division and seeks affirmative relief from this Court. Specifically, defendant requests this Court to (1) order plaintiff to remit $30,000 to defendant in connection with the value of a safety deposit box controlled by plaintiff that the trial court did not address; (2) reverse the trial court's award of $15,000 to plaintiff for landscaping improvements, given the lack of credible evidence in support of this amount; and (3) reverse the trial court's imputation of $100,000 in income to defendant for purposes of calculating child support, on the ground that the court failed to make requisite findings of fact to impute such a large sum to defendant. Defendant did not file a cross-appeal under MCR 7.207. Although an appellee need not file a cross-appeal to advance alternative reasons rejected by a trial court in support of the court's judgment, an appellee cannot obtain greater relief or a decision more favorable than rendered by the lower court without taking a cross-appeal. *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521

NW2d 774 (1994); *Hanton v Hantz Fin Servs, Inc*, 306 Mich App 654, 669; 858 NW2d 481 (2014). Because defendant seeks to expand the scope of relief awarded by the trial court and he did not file a cross-appeal, he is not entitled to this requested relief.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica