*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARCIE GLOWACKI,

              Plaintiff-Appellee,

v

MARTIN GLOWACKI,

              Defendant-Appellant.

UNPUBLISHED
July 09, 2025
10:13 AM

No. 369908
Oakland Circuit Court
Family Division
LC No. 2017-856477-DO

Before: MALDONADO, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

After a second remand by this Court, defendant appeals by right the order determining that defendant owed $464,509.56 to plaintiff to cover his share of the parties' tax liability after the Internal Revenue Service (IRS) seized proceeds from the sale of property in Avon, Colorado ("the Colorado home") awarded to plaintiff in the judgment of divorce. The amount owed by defendant was calculated after the trial court reapportioned the parties' tax debt on second remand to a 90-10 split, with defendant liable for 90% of the tax debt and plaintiff liable for 10%. We affirm.

## I. BACKGROUND

This is the fifth time this matter has come before this Court. This postjudgment divorce matter stems from disputes regarding the parties' financial obligations, including the distribution of liability for their tax debt. The facts underlying this matter were previously summarized by this Court:

> The parties married in April 2004. Although the parties did not have any children of the marriage, plaintiff had two sons from a previous marriage. Defendant was in medical school when the parties met. Before and during the early years of the parties' marriage, plaintiff worked in the aviation industry, selling seats on private planes for both her own business and another company. In 2007, after defendant had obtained his medical degree, he established a medical practice known as the Sunrise Institute of Pain Management ("Sunrise"). Plaintiff contributed funds to assist in establishing this practice and she was involved in

-1-

managing the practice until approximately 2011 or 2012, when she decided to remain at home to care for her two sons and the marital home.

Despite the fact that Sunrise generated revenues in excess of $1.5 million annually, the parties fell behind in their tax obligations to the state of Michigan and the United States government. At the time of trial in 2018, the parties owed approximately $2.7 million in outstanding taxes to the state of Michigan and the Internal Revenue Service (IRS). Although the IRS initially granted plaintiff innocent-spouse relief with regard to a portion of the tax liability, it later denied plaintiff innocent-spouse relief with respect to tax years 2011-2014 and 2016.

At trial, the parties attributed the tax debt to lavish spending, with each party blaming the other for the spending and financial decisions. Similarly, both parties took credit for the launch of defendant's medical practice. At the time of trial, defendant's income from his medical practice was approximately $1 million annually. Meanwhile, plaintiff claimed that she had to sell personal belongings and jewelry, and accept money from her children, to make ends meet after filing for divorce.

The primary issues at the bench trial involved the division of the marital estate, including apportionment of the tax liabilities, and determination of spousal support for plaintiff. The trial court awarded the parties' marital home in Michigan to defendant, and awarded the parties' vacation home in Colorado to plaintiff. The trial court found that both parties were responsible for the excessive spending . . . and held both parties equally responsible for repayment of the tax debt.

With respect to defendant's medical practice, . . . the practice had a property value of $184,000. . . . During the bench trial, plaintiff's counsel explained that he was exploring the value of the medical practice for its relevance in determining an appropriate award of spousal support. . . . [T]he trial court inquired whether the parties' homes in Michigan and Colorado were the only assets in the marital estate subject to division, and both counsel for defendant and plaintiff agreed.

. . . [I]n plaintiff's proposed findings of fact and conclusions of law with regard to spousal support, plaintiff focused on the annual revenue from Sunrise, as well as defendant's annual income, to support her request for spousal support. Plaintiff also requested that defendant pay the mortgages on both the Michigan and Colorado properties. Plaintiff did not request that defendant's medical practice be divided and a share or monetary payment be made to plaintiff. . . . [T]he trial court did not award any portion of the value of defendant's medical practice to plaintiff.

In determining spousal support, the trial court found that defendant's income was $1 million annually. The trial court also found that plaintiff was capable of working and imputed income of $30,000 per year to her. The trial court awarded plaintiff spousal support for four years, in the amount of $30,000 per month for the first year, and $20,000 per month for the subsequent three years. The trial court also held that defendant would be permitted to deduct from these monthly

amounts certain expenses and debts for which plaintiff was held responsible. Specifically, for the first year, the trial court required defendant to pay plaintiff $30,000 per month, but also permitted defendant to deduct from that amount: (1) plaintiff's car payment; (2) plaintiff's 50% share of the monthly payments to the IRS and the state of Michigan; (3) plaintiff's 50% share of a receiver fees; (4) the monthly mortgage payment and a monthly line-of-credit payment on the Colorado home; and (5) plaintiff's liability for attorney fees of $43,890, with $5,296.25 payable each month for the first six months, and with the balance payable in months seven and eight. The trial court reduced spousal support during the subsequent three years to $20,000 per month, and permitted defendant to deduct from that amount plaintiff's 50% share of the monthly payments to the IRS and the state of Michigan for the outstanding tax debt. In the uniform spousal support order (USSO), the trial court ordered, over plaintiff's objection, that spousal support would be "forever barred" after 48 months. [*Glowacki v Glowacki*, unpublished per curiam opinion of the Court of Appeals, issued June 10, 2021 (Docket No. 350691) ("*Glowacki I*"), pp 1-3.]

The judgment of divorce was entered on August 30, 2019. Defendant was to pay $7,500 monthly to the IRS. Plaintiff received the Colorado home in the judgment and was ordered to either refinance and remove defendant's name from the mortgage or sell the Colorado home within 12 months. If sold, plaintiff would receive any proceeds after "all obligations," such as liens, tax liens, or mortgages were paid. The judgment of divorce stated: "Except as otherwise provided herein, each party shall be solely liable for any tax liability relative to any asset and/or obligation which they have been awarded in this Judgment."

Plaintiff appealed by right the judgment of divorce, challenging "the trial court's decisions to hold her 50% responsible for repayment of the parties' tax debt." *Glowacki I*, unpub op at 1. This Court determined that the trial court did not adequately weigh the factors outlined by our Supreme Court in *Sparks v Sparks*, 440 Mich 141; 485 NW2d 893 (1992) ("the *Sparks* factors"), which were "relevant to arrive at a fair and equitable distribution." *Glowacki I*, unpub op at 6. This Court vacated "the portion of the judgment holding plaintiff responsible for 50% of the remaining tax debt after spousal support is discontinued after four years," and remanded "to the trial court for reconsideration of the apportionment of the outstanding tax debt." *Id*. at 9.

After this Court's first remand, the trial court discussed the *Sparks* factors and again held that the tax debt should be equally apportioned between the parties. Plaintiff appealed again by right. *Glowacki v Glowacki*, unpublished per curiam opinion of the Court of Appeals, issued May 11, 2023 (Docket Nos. 359084 & 361040) ("*Glowacki II*"). This Court concluded the trial court did not comply with its "clear directive to consider and contrast the earning capacity of each party," and remanded "to the trial court with a directive that it more equitably apportion this joint obligation of the parties, while recognizing their actual earning capacities." *Id*. at 5-6. While *Glowacki II* was pending, defendant sold the Colorado home on November 7, 2022. The IRS seized $624,809.59 from the proceeds of the sale under the tax lien.

On June 20, 2023, on this Court's second remand, the trial court issued an opinion and order reapportioning the parties' tax liability from a 50-50 split to a 90-10 split, with defendant responsible for paying 90%. Defendant moved for clarification of the trial court's opinion,

asserting that under *Glowacki II*, any reapportionment of the parties' tax liability would not be retroactive. The trial court disagreed and ordered that the 90-10 split "applies to any portion of the parties' tax debt obligation not paid toward the IRS payment plan with Plaintiff's share being paid through deduction of Plaintiff's monthly spousal support as provided in the Judgment of Divorce." The parties then submitted competing orders followed by competing motions regarding whether and to what extent plaintiff was owed reimbursement for any overpayment she made from the proceeds of the Colorado home regarding the parties' tax liability in light of the trial court's order of a 90/10 split.

The trial court held a hearing on the various motions and eventually entered an order granting plaintiff's motion for reimbursement, reiterating that the 90-10 split "applies to everything except payments made by the parties under the payment plan with the IRS and [s]tate of Michigan, one-half of which were paid from the spousal support awarded to [plaintiff] in the August 30, 2019 Judgment of Divorce." Defendant was ordered to "make a partial payment to Plaintiff of any reimbursement owed in relation to reallocation of the funds seized by the IRS from sale of the Colorado [home] within 30 days . . . in the amount of $25,000 toward the balance of whatever reimbursement may be owed to her." The trial court denied plaintiff's emergency motion for partial release of funds, but stated defendant was required to pay Plaintiff through bank wire, $25,000 no later than October 25, 2023.

The parties filed additional motions regarding the release of the funds defendant owed as a result of the 90/10 reapportionment of the tax debt liability. Defendant eventually acknowledged the trial court's order that the amount subject to the 90-10 split was $624,809.59, but requested certain credits. After an evidentiary hearing, the trial court agreed to various credits and determined that defendant owed plaintiff $464,509.56. To reach that amount, the trial court concluded that the IRS seized $624,809.59 in proceeds from the sale of the Colorado home on November 7, 2022. The trial court applied its 90-10 split to this figure. Defendant's 90% share was $562,328.63, and plaintiff's 10% share was $62,480.96. The trial court awarded defendant various credits, totaling $97,819.07, which included: (a) $44,319.07 for attorney fees and expenses owed by plaintiff to defendant; (b) $25,000 for an advance payment made to plaintiff; (c) $22,500 for advance payments made to plaintiff ; and (d) $6,000 for plaintiff's 10% share of payments made to the IRS under a payment plan from July 2023, until February 2024 (the period after spousal support ended). The trial court ordered defendant to make $7,500 monthly payments to plaintiff. Defendant filed this appeal.[1]

_____

[1] Defendant moved in the trial court for a stay pending the appeal, which plaintiff opposed. The trial court denied the motion. Defendant moved this Court for a stay, which plaintiff opposed. This Court granted defendant's motion for immediate consideration, but denied the motion for a stay. *Glowacki v Glowacki*, unpublished order of the Court of Appeals, entered April 1, 2024 (Docket No. 369908). Defendant applied for leave to appeal in the Michigan Supreme Court and moved that Court for a stay, which plaintiff opposed. The Michigan Supreme Court granted immediate consideration of the motion, but denied defendant's application to bypass the Court of Appeals. *Glowacki v Glowacki*, 513 Mich 1073 (2024). The Michigan Supreme Court also denied defendant's application for leave to appeal the Court of Appeals order denying his motion for a

## II. ANALYSIS

## A. SCOPE OF TRIAL COURT PROCEEDINGS ON SECOND REMAND

Defendant contends the trial court exceeded its authority after second remand by applying the 90-10 split of the parties' tax debt to the portion of the proceeds from the sale of the Colorado home seized by the IRS. We disagree.

"Whether a trial court properly interpreted the scope of a remand is a question of law that this Court reviews de novo." *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 347 Mich App 533, 546; 15 NW3d 357 (2023). "We also review de novo the application of legal and equitable doctrines, such as . . . law of the case." *Kuebler v Kuebler*, 346 Mich App 633, 653-654; 13 NW3d 339 (2023).

"The power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court." *Law Offices of Jeffrey Sherbow, PC*, 347 Mich App at 546 (quotation marks and citation omitted). "It is the duty of the lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court." *Rodriguez v Gen Motors Corp*, 204 Mich App 509, 514; 516 NW2d 105 (1994). "When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *Int'l Bus Machines Corp v Dep't of Treasury*, 316 Mich App 346, 350; 891 NW2d 880 (2016) (quotation marks and citation omitted).

> The law[-]of[-]the[-]case doctrine provides that a ruling by an appellate court with regard to a particular issue binds the appellate court and all lower tribunals with respect to that issue, but only if the facts remain materially the same. The doctrine's purpose is the need for finality of judgments and the lack of jurisdiction of an appellate court to modify its judgments except on rehearing. [*Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 110-111; 888 NW2d 295 (2016) (quotation marks and citations omitted).]

The law-of-the-case doctrine "applies 'only to issues *actually decided*, either implicitly or explicitly, in the prior appeal.' " *Rott v Rott*, 508 Mich 274, 287; 972 NW2d 789 (2021), quoting *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). The law-of-the-case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Rott*, 508 Mich at 287 (quotation marks, citations, and alteration omitted). A trial court is "free on remand to consider and decide any matters left open" under a remand order. *Lopatin*, 462 Mich at 261.

In the present case, after second remand, the trial court adequately carried out this Court's remand instructions in *Glowacki II*. In its order and opinion reapportioning the parties' tax liability

---

stay. *Id*. The Michigan Supreme Court also denied defendant's motion for a stay. *Id*. Plaintiff moved this Court to dismiss plaintiff's claim of appeal for lack of jurisdiction, which defendant opposed. This Court denied the motion to dismiss. *Glowacki v Glowacki*, unpublished order of the Court of Appeals, entered September 26, 2024 (Docket No. 369908).

from a 50-50 split to a 90-10 split, the trial court correctly noted: "It is clear upon the second remand that [this Court] wants [plaintiff's] earning ability and life status to be more carefully considered when re[]dividing the parties' outstanding tax liability." Later, the trial court explained the 90-10 split "applie[d] to any portion of the parties' tax debt obligation not paid toward the IRS payment plan with Plaintiff's share being paid through deduction of Plaintiff's monthly spousal support as provided in the Judgment of Divorce."

In *Glowacki I*, plaintiff challenged "the trial court's decisions to hold her 50% responsible for repayment of the parties' tax debt." *Glowacki I*, unpub op at 1. This Court agreed, vacating "the portion of the judgment holding plaintiff responsible for 50% of the remaining tax debt after spousal support is discontinued after four years," and remanding "to the trial court for reconsideration of the apportionment of the outstanding tax debt." *Id*. at 9. This Court concluded the trial court had not adequately weighed the *Sparks* factors, emphasizing that the trial court "did not address the parties' substantial income disparity or plaintiff's limited earning capacity compared to defendant's earning capacity." *Id*.

This Court noted that the trial court "awarded plaintiff spousal support for four years," including $30,000 monthly in the first year and then $20,000 monthly for the remaining three years. *Id*. at 2. Defendant could "deduct from these monthly amounts certain expenses and debts for which plaintiff was held responsible." *Id*. In the first year of paying spousal support, defendant could deduct, among other things, "plaintiff's 50% share of the monthly payments to the IRS and the state of Michigan." *Id*. at 3. During the remaining three years, defendant could "deduct . . . plaintiff's 50% share of the monthly payments to the IRS and state of Michigan for the outstanding tax debt." *Id*. This Court's decision in *Glowacki I* permitted the 50-50 split for the parties' tax debt during the years in which plaintiff was paid spousal support, but not after spousal support ended because the trial court did not adequately explain that "imposing half the tax debt on plaintiff was fair and equitable." *Id*. at 9. This Court noted that plaintiff was awarded the Colorado home in the judgment of divorce. *Id*. at 2. However, the sale of the Colorado home had not occurred and was not discussed by this Court in *Glowacki I*.

After this Court's first remand, the trial court "again held that the tax debt should be equally apportioned between plaintiff and defendant," and plaintiff appealed. *Glowacki II*, unpub op at 3. This Court concluded the "trial court's decision to again apportion the $2.7 million tax debt equally between the parties [was] inequitable." *Id*. at 6. This Court remanded the matter to the trial court a second time "with a directive that it more equitably apportion this joint obligation of the parties, while recognizing their actual earning capacities." *Id*. This Court stated:

> [W]hile the trial court indeed considered plaintiff's prior income in formulating its opinion that plaintiff had a substantial earning capacity, it did not comply with one of this Court's key directives, which was to compare plaintiff's earning capacity to the earning capacity of defendant, who was earning $1 million annually from his successful medical practice. [*Id*. at 5.]

This Court continued: "Plaintiff retains substantial earning capacity that she has thus far failed to exercise, which the trial court may once again take into consideration when fashioning a more equitable division of the joint tax obligation." *Id*. at 6.

Also in *Glowacki II*, this Court addressed plaintiff's request for "relief from the refinance-or-sell provision," noting plaintiff "was unable to refinance the home because the IRS had filed tax liens against the property and the amount of the liens, combined with an outstanding mortgage debt and a line-of-credit debt, exceeded the equity value of the home." *Id*. at 3. This Court concluded that the trial court did not abuse its discretion by denying plaintiff's motion for relief from judgment. *Id*. at 6. In addressing the issue, this Court was aware that the equity in the Colorado home was affected by tax liens on the property, noting that the parties and the trial court knew "such tax liens were required to be satisfied before plaintiff received any net sale proceeds." *Id*. at 7-8. This Court stated that plaintiff could "work with the IRS to subordinate the tax liens in order to allow her either to sell or refinance the Colorado home, as ordered by the trial court." *Id*. at 9. This Court's opinion in *Glowacki II* was issued May 11, 2023. *Id*. at 1.

However, there was no discussion of the fact that the Colorado home was sold by defendant on November 7, 2022, which resulted in the IRS seizing $624,809.59 from the proceeds. This Court in *Glowacki II* believed plaintiff owned the home and, importantly, did not provide a ruling regarding whether the proceeds from the sale of the Colorado home were (1) solely plaintiff's responsibility, (2) subject to the 50-50 split, or (3) subject to a more equitable split on second remand. *Id*. at 6-9. The issue was not decided by this Court because it was not presented by plaintiff. Consequently, the trial court on second remand did not exceed the scope of its authority on remand. Instead, the trial court became aware of the sale of the Colorado home after the second remand, stating:

> At the time that Remand I was decided, *the Court of Appeals would not have anticipated that payment of the parties' tax obligation to the IRS would have been made outside of the negotiated IRS payment plan where Plaintiff's share was deducted from her spousal support during the life of that obligation as provided for in the Judgment of Divorce*. The IRS' enforcement of its lien on the Colorado home . . . and application of the sale proceeds to the parties' IRS tax debt was outside of the scope of the spousal support deductions, and while known as a possibility because there was a tax lien on both of the parties' residences in Michigan and Colorado[,] it was not anticipated to be effectuated by the Court of Appeals when it issued Remand I, which was relied upon in Remand II, so *was not specifically addressed by either appellate decision*. Therefore, the 10/90 apportionment ratio . . . applies to any portion of the parties' tax debt obligation not paid through the IRS payment plan payments for the duration of the spousal support obligation, when the Judgment required Plaintiff[']s share of that tax debt obligation to be remitted directly by Defendant from Plaintiff's spousal support. [emphasis added.]

Ultimately, the trial court applied the 90-10 split to the amount of proceeds from the sale of the Colorado home, which were seized by the IRS, concluding that defendant owed plaintiff $464,509.56. The trial court determined that the sale of the Colorado home occurred "before the termination of Defendant's spousal support obligation to Plaintiff," which terminated on June 30, 2023. Defendant's 90% share was $562,328.63 and plaintiff's 10% share was $62,480.96. The trial court awarded defendant various credits, totaling $97,819.07. The trial court ordered defendant to continue making $7,500 monthly payments to plaintiff, consistent with the order of December 13, 2023, "until further Order of the [trial court] or a stay is issued." The issue was left

open by this Court, and the trial court did not err by deciding the issue on second remand. See *Lopatin*, 462 Mich at 261.

Defendant further contends the trial court violated the "rule of mandate." The United States Court of Appeals for the Ninth Circuit described the rule of mandate in *Stacy v Colvin*, 825 F3d 563, 567-568 (CA 9, 2016) (quotation marks, footnote, and citations omitted):

> The rule of mandate is similar to, but broader than, the law[-]of[-]the[-]case doctrine. The rule provides that any district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it. The district court may, however, decide anything not foreclosed by the mandate. But the district court commits jurisdictional error if it takes actions that contradict the mandate.

This Court interpreted the rule of mandate in *Int'l Bus Machines Corp*, 316 Mich App at 352, stating, "it quite plainly embodies the well-accepted principle in our jurisprudence that a lower court must strictly comply with, and may not exceed the scope of, a remand order." Defendant relatedly asserts that the trial court committed a jurisdictional error by applying the 90-10 split retroactively to the proceeds from the sale of the Colorado home, which were seized by the IRS because the sale of the home occurred before spousal support terminated. However, as discussed, the trial court did not exceed its scope on second remand when it applied the 90-10 split to the amount seized by the IRS after the sale of the Colorado home because that issue was left open by this Court.

Further, defendant's contention that the trial court ignored the judgment of divorce is not persuasive. It is undisputed that the judgment of divorce stated: "Except as otherwise provided herein, each party shall be solely liable for any tax liability relative to any asset and/or obligation which they have been awarded in this Judgment." However, defendant's emphasis on this provision is misplaced.[2] Although the parties, the trial court, and this Court knew about the tax liens on the Colorado home, this Court was not aware of the sale of the Colorado home when it remanded the case on either occasion. The trial court was presented with this information after second remand by this Court and was able to decide the matter. The trial court's actions complied with this Court's remand instructions.

---

[2] Defendant's contentions regarding plaintiff's arguments in prior appeals are also without merit. Defendant contends, for example, in a prior appeal, "plaintiff raised no issue concerning either the obligation to refinance or sell the condominium, or regarding the tax liens that burdened the condominium." Defendant makes additional arguments on appeal that plaintiff sought reallocation of the tax debt only after spousal support ended. However, this fact does not appear to be disputed. The crux of this issue on appeal is that the trial court did not exceed its scope on second remand because it was presented with new information and ruled on an issue left undecided by this Court.

## B. DEFENDANT'S EQUITY ARGUMENTS

Defendant also contends that the trial court's application of the 90-10 split to the Colorado home resulted in an inequitable property settlement. We disagree.

> In deciding issues on appeal involving division of marital property, this Court first reviews the trial court's findings of fact. Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous. A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made. If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and will be affirmed unless this Court is left with a firm conviction that the division was inequitable. [*Butler v Simmons-Butler*, 308 Mich App 195, 207-208; 863 NW2d 677 (2014) (citations omitted).]

This Court has provided an overview of how a trial court should reach an equitable division of marital assets, stating:

> The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances. The division need not be mathematically equal, but any significant departure from congruence must be clearly explained. To reach an equitable division, the trial court should consider the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health and needs, fault or past misconduct, and any other equitable circumstance. The determination of relevant factors will vary with the circumstances of each case, and no one factor should be given undue weight. The trial court must make specific findings regarding the factors it determines to be relevant. [*Id*. at 208-209 (quotation marks and citations omitted).]

Further, our Supreme Court stated:

> We hold that the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Sparks*, 440 Mich at 159-160 (citation omitted).]

"The trial court is given broad discretion in fashioning its rulings and there can be no strict mathematical formulations." *Id*. at 158-159.

Defendant presents an itemization of his debts, ostensibly to argue that the judgment of divorce became grossly inequitable after the trial court applied the 90-10 split to the Colorado home. Defendant also notes that his share of the tax debt has increased from $1,050,000 to $1,890,000 (which is 90% of the remaining $2.1 million tax debt), in addition to the amount defendant owes plaintiff for 90% of the proceeds seized by the IRS after the sale of the Colorado home. However, in *Glowacki I*, unpub op at 9, this Court vacated the 50-50 split, emphasizing how the trial court "did not address the parties' substantial income disparity or plaintiff's limited earning capacity compared to defendant's earning capacity." In *Glowacki II*, unpub op at 6, this Court remanded a second time for the trial court to "more equitably apportion this joint obligation of the parties, while recognizing their actual earning capacities." This Court emphasized that the trial court did not "compare plaintiff's earning capacity to the earning *capacity* of defendant, who was earning $1 million annually from his successful medical practice." *Id*. at 5.

Consequently, on second remand, the trial court followed this Court's instructions by reapportioning the tax debt under a 90-10 split. The trial court correctly noted, "on its second remand, [this Court] directed the trial court to specifically consider more carefully *Sparks* factor number seven (7), the earning abilities of the parties." The trial court assessed plaintiff's ability to earn and relied, in part, on "the previous jurist's findings of fact," including the fact plaintiff worked about five years during the marriage, receiving "18% commissions." The trial court considered plaintiff's earning during those five years, finding her "past ability to earn [was] approximately $106,685 annually." The trial court concluded that plaintiff had no health issues and her age did not inhibit her ability to work. The trial court stated that "specialized work was no longer available to [plaintiff]" and found it was "unlikely that [plaintiff] continues to have the ability to earn over $100,000 annually. . . ." Consistent "with the previous jurist's findings and the Court of Appeals' confirmation," the trial court found that plaintiff had "the current ability to earn $52,000 and is underemployed by at least $23,000." Because of plaintiff's "business acumen and managerial skills," the trial court found that she was capable of earning a minimum of $75,000 annually. The trial court compared the parties' earnings (or earning potential), accounting for federal income taxes. The trial court continued:

> Comparing [defendant's] earning capacity after adjusting for federal income taxes of $669,668 to Plaintiff's potential earnings after adjusting for federal income taxes of $63,192.50, Defendant earns over 9.4 times what Plaintiff should be able to earn. Therefore, this court finds that with respect to factor 7 [of the *Sparks* factors], Plaintiff has a minimum ability to pay her proportionate share of the parties' remaining tax debt. Considering the *Sparks* factors as previously established, and by putting greater emphasis on comparing factor 7, this court finds that the marital tax liability should be divided with Plaintiff paying 10% and Defendant paying 90%, rather than [t]he original 50/50 allocation.

> To summarize the previous *Sparks* factors as adopted by the higher court, this court reiterates that the parties had a 15-year marriage (factor 1) where both parties contributed to the financial successes and tax liabilities of the marriage (factor 2). Neither party demonstrated a physical or mental impairment affecting

-10-

their ability to work (factor 4), but [plaintiff's] life status has declined substantially since the divorce (factor 5). Testimony revealed [plaintiff] invested her savings and investments into the marital pain clinic business, so her financial needs and circumstance were more dire than [defendant's] (factor 6). The previous jurist found both parties to be equally at fault for the breakdown of the marital relationship (factor 8). Additionally, when evaluating general principles of equity (factor 9), the previous jurist found that [plaintiff] "caused substantial delay and expense" in the repair and sale of the marital home for which proceeds were to be applied to their tax debt. Moreover, the court found [plaintiff] "was not an active participant in resolving the IRS tax liability issues and in fact hindered progress" causing a detriment to both parties.

Four years post-divorce, this court finds [plaintiff] is 52 years old with an earning capacity of $63,192.50 after federal taxes annually and [defendant] is 48 years old with an earning capacity of $669,668 after federal taxes annually (factors 3 and 7). In comparing the parties' earning capacity . . . it would take [defendant] 4 years to pay $2.7 million in debt . . ., but it would take [plaintiff] almost 42 years and 8 months to do so. . . . Considering the previously determined *Sparks* factors as stated above with a focus on factor 7—the parties' earning capacity, [the trial court] finds that [plaintiff] shall be responsible for 10% and [defendant] shall be responsible for 90% of the estimated $2.7 million marital tax liability that existed at the time the Judgment of Divorce was entered.

The trial court's findings of fact do not leave this Court with a definite and firm conviction a mistake was made. See *Butler*, 308 Mich App at 208. Further, the trial court's dispositional ruling on second remand was fair, and this Court is not left with a firm conviction that the reapportionment of the tax debt liability or resulting property division was inequitable. *See id*. Contrary to defendant's assertions, the trial court explained its understanding of this Court's instructions on second remand and discussed why the 90-10 split applied to the Colorado home. The trial court did not err by determining that defendant's 90% share of the amount seized by the IRS from the sale of the Colorado home was $562,328.63. Ultimately, plaintiff remained responsible for 10%, or $62,480.96. Also, worth noting, the trial court awarded defendant numerous credits, which were deducted from the amount he owed to plaintiff, totaling $97,819.07.

Defendant nevertheless argues under *Meatte v Meatte*, 459 Mich 862; 584 NW2d 922 (1988), that the trial court must "modify its original property division in a manner which strikes an equitable balance." Under *Meatte*, defendant requests (1) he "be awarded an equitable share of the Colorado [home] retroactively" and (2) "plaintiff's checks and concealed bank accounts" be "valued in calculating her share of the marital estate." Defendant, however, fails to offer any analysis of our Supreme Court's opinion in *Meatte*. See *Tripp v Baker*, 346 Mich App 257, 273; 12 NW3d 45 (2023) (quotation marks and citation omitted) ("Insufficiently briefed issues are deemed abandoned on appeal."). In any event, the facts in *Meatte* differ from those in this case and do not justify another remand or the relief requested by defendant.

Defendant also contends that the trial court failed to consider the effect on the initial division of property when it applied the 90-10 split to the proceeds seized by the IRS after the sale of the Colorado home. To that end, defendant relied on this Court's decision in *McNamara v*

*Horner*, 249 Mich App 177, 186-187; 642 NW2d 385 (2002). However, the facts in *McNamara* are distinguishable from those presented here. In *McNamara*, the trial court initially divided the marital assets equally between the parties and later reapportioned the division to a 55-45 split, favoring the defendant. *Id*. at 186. However, the trial court (1) did not render any findings of fact "regarding the duration of the marriage and the life status, necessities, and circumstances of the parties" or (2) did not use "other general principles of equity that might have been relevant to the property division." *Id*. Further, the trial court "placed disproportionate weight on its nonspecific findings regarding the age and earning abilities of the parties." *Id*. As a result, this Court remanded to the trial court to "make further findings of fact regarding the relevant property division factors." *Id*. at 186-187. In contrast, in this case, the trial court on second remand finally addressed all the appropriate *Sparks* factors and did not err in reapportioning the parties' tax debt to a 90-10 split. Consequently, the overall property division was not inequitable.

Defendant finally asserts that the 90-10 split of the parties' tax debt was inequitable and must be reapportioned to a 60-40 split. We disagree.

The trial court took this Court's "cues that even though [plaintiff] had previously earned an income well into the six-figures range, the record reflected that she had a current ability to earn $25 per hour . . . and remains underemployed." The trial court found that plaintiff had the current ability to earn $52,000 and was underemployed by at least $23,000, which was "consistent with the previous jurist's findings and the Court of Appeals' confirmation of the relevant findings necessary to compare [plaintiff's] earning capacity with [defendant's earning capacity][.]" Not only did the trial court assess the after-tax income of the parties, it properly put "greater emphasis" on this *Sparks* factor. When reapportioning the tax debt under a 90-10 split, the trial court also considered "the *Sparks* factors as previously established[.]"

In other words, the 90-10 split was not reached by an "arithmetic exercise" as defendant asserts. Based on its consideration of the "previous *Sparks* factors as adopted by [this Court]," the trial court did not violate the law-of-the-case doctrine because it adhered to this Court's rulings. See *Brownlow*, 315 Mich App at 110-111. The trial court complied with this Court's instructions on second remand, and its findings of fact do not leave this Court with a definite and firm conviction that a mistake was made, *Butler*, 308 Mich App at 207-208, or with a firm conviction that the reapportionment of the tax debt was inequitable, *id*.

Defendant relies on this Court's opinion in *Berger v Berger*, 277 Mich App 700; 747 NW2d 336 (2008), to contend, "[e]ven when only one party is at fault, this Court has never upheld a property division as extreme [as] 90-10, rejecting even 70-30." In *Berger*, this Court concluded the trial court "abused its discretion by inequitably dividing the marital property and awarding [the] plaintiff 70[%] and [the] defendant 30[%]." *Id*. at 716. The facts in *Berger* are distinguishable from those presented in this case. In *Berger*, the defendant earned $120,000 and the plaintiff earned $22,000. *Id*. at 719. However, this Court noted that the income disparity was accurate "in the year preceding the divorce trial, but [was] a misleading reflection of the parties' present and future earning capacities" because the plaintiff "could earn $50,000 a year as a nurse or an equal amount as an assistant college professor of dance." *Id*. at 720. The defendant also had an affair. *Id*. at 721. In the present case, although plaintiff "had a past ability to earn approximately $106,685 annually," and was a " 'savvy businessperson,' " the trial court acknowledged that income "was earned more than 15 years ago and such specialized work was no longer available to

[plaintiff]." The trial court did not err by finding that it was unlikely for plaintiff "to earn over $100,000 annually[.]" Defendant's broad contention that plaintiff has transferrable business skills allowing her to earn $337,500 annually is unsupported. Defendant offers no persuasive justification for a 60-40 split, and a remand is unnecessary.

## III. CONCLUSION

The trial court did not exceed the scope of its authority on second remand when it applied the 90-10 split to the proceeds from the sale of the Colorado home seized by the IRS. The trial court complied with this Court's instructions on second remand and its findings of fact do not leave this Court with a definite and firm conviction that a mistake was made. Further, this Court is not left with a firm conviction that the application of the 90-10 split to the amount seized by the IRS after the sale of the Colorado home was inequitable.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Mark T. Boonstra
/s/ Randy J. Wallace